## HOLLOWAY *v.* EAGLE.

## Opinion delivered July 8, 1918.

1. ADMINISTRATION—SALE UNDER ORDER OF COURT—ADMINISTRATOR CAN NOT PURCHASE.—An executor or administrator can not lawfully become the purchaser of the property of the deceased, where the same is sold by a commissioner, under order of the court; and such a sale is voidable at the instance of the heirs of the deceased.

2. ADMINISTRATION—SALE OF LANDS—PURCHASE BY ADMINISTRATOR.— The lands of deceased were sold by a commissioner under order of the court; *held,* a finding by the chancellor that the administrator of deceased's estate became the purchaser at said sale was not against the preponderance of the evidence.

3. TRUSTS—LIABILITY OF PURCHASER FROM TRUSTEE OF EXPRESS TRUST. One who purchases property from the trustee of an express trust is liable to the *cestui que trust* only when he purchases with knowledge that the trustee was deeding trust property.

4. ADMINISTRATION—PURCHASE OF LAND OF ESTATE BY ADMINISTRATOR—SALE TO INNOCENT PURCHASER.—One W. was the administrator of the estate of H. and purchased lands belonging to the estate at a commissioner's sale. W. then sold the lands to J. J. dealt openly with the lands, occupying them for many years, and making extensive improvements thereon. *Held,* the heirs of H., who were of age at the time of the sale, except the married women, were barred by the seven and five years statutes of limitations, and that the female heirs, who were alive and married at the time of the sale, and their children, were barred by the five-year statute of limitations; *held,* also that all the parties were barred by laches.

5. SAME—SAME—MINOR HEIR.—Under the facts in the preceding syllabus, *held* an heir of H., who was a minor at the time of the sale to W., and who instituted suit before the expiration of the three-year limit after reaching his majority, was not barred by limitations, neither was he barred by laches, because he was not *sui juris* at the time of the sale. Laches will not be imputed to him until the period of limitations has expired after the minor heir has reached his majority.

6. CHANCERY PRACTICE—FINDING OF MASTER—EVIDENCE TO BE CONSIDERED.—C., the minor heir of one H., sued J. as trustee for an interest in the estate of H. H. died, owing money to W. and J. W. was administrator of the estate of H. and purchased lands which belonged to H. at a sale under foreclosure of his claim with J. against H. J. purchased from W. A master was appointed to ascertain the account between the parties. *Held*, in arriving at his report in determining the amount of interest to be charged, that the judgments in the foreclosure matters were competent evidence to be considered by the master, together with all other evidence taken in connection therewith.

7. CONSTRUCTIVE TRUSTS—VALUE OF IMPROVEMENTS.—Where a constructive trust is decreed, the trustee will be charged with the rental value of the land during the period of his possession, and will be allowed credit for the purchase money paid, with interest, and the value of improvements made.

Appeal from Lonoke Chancery Court; *J. E. Martineau*, Chancellor; affirmed.

*Rhoton & Helm* and *Carmichael, Brooks & Rector*, for appellants.

1. W. H. Eagle was a trustee and Joe P. Eagle should be treated as a trustee for plaintiffs. An administrator can not buy at his own sale, directly or indirectly. 87 Ark. 142; 85 *Id.* 140; 95 *Id.* 434. Nor at an execution sale. 75 *Id.* 184. Nor at a commissioner's sale, tax sale, or any other public or private sale without creating a trust. 102 Ark. 65; 55 *Id.* 85. There was no confirmation of the sale. 105 *Id.* 261; 23 *Id.* 41; 10 Oh. St. 557. Plaintiffs were not barred by limitation. Kirby's Digest, § 5056-7, 5060; 55 Ark. 85; 87 *Id.* 238. Nor by laches as to at least infants and married women. W. H. and Joe P. Eagle were both trustees for plaintiffs. 2 Perry on Trusts (6 ed.), § § 860-863; 39 Cyc. 600.

2. The judgments rendered upon which the account was based, were of no validity. A man can not sue himself; he can not be both plaintiff and defendant as here. 12 Am. Dec. 684; 11 *Id.* 556; 55 *Id.* 142; 17 *Id.* 569. The master should have started the account with the mortgages and not with the judgments with interest and costs added.

3. The beneficiaries should not have been charged with permanent improvements. 160 acres was a homestead. Nor should they be charged with a mule, salary of overseer, cook, personal services of a trustee, etc. 68 Ark. 534; 23 *Id.* 622; 101 *Id.* 18; 78 *Id.* 111; 96 *Id.* 281; 84 *Id.* 160; 52 *Id.* 381; 49 L. R. A. (N. S.) 125, and note; 97 Ark. 397; 18 *Id.* 34.

4. It was error to charge 10% interest and for all classes of losses, as shown by the master's report, such as quitclaim deeds, surveying lands, pumps, houses, fences, salary manager, cook, horse and feed, mule killed, building bridge, cutting out road, etc. Appellants also specifically excepted to the finding in favor of W. H. Eagle as to the judgment in favor of W. H. Eagle & Son, Nov. 21, 1894, for $1,508.08 and 10% interest and to the judgment of $3,277.07 and 10% interest.

5. A beneficiary, especially in infant, can not be improved out of his estate. 95 Ark. 168; 115 *Id.* 572; 2 Perry Trusts (6 ed.), § § 526, 546, 606; 42 Ark. 120.

The improvements must be in good faith. 14 R. C. L. 22, § 11.

6. Appellants have the right to follow the funds as well as the property itself in the same suit. 96 Ark. 281.

*Thos. C. Trimble, Jr.,* and *Ross Williams,* for appellees.

1. The mortgage sales were not void. They were made by the court through a commissioner. The lands brought their fair value. The foreclosure decrees can not be attacked collaterally. All the Holloway heirs were parties to the foreclosure proceedings. The sales were

duly confirmed and approved. 23 Ark. 41; 113 *Id.* 341. All irregularities were cured by confirmation. 74 Ark. 475.

2. On collateral attack all defects amendable will be considered as amended. 56 Ark. 191; 32 *Id.* 278; *Ib.* 407; 34 *Id.* 682.

3. The court had jurisdiction and the decrees were not void, but merely voidable and not subject to collateral attack. 105 Ark. 5. No fraud was shown. 90 *Id.* 167. Confirmation cured all defects and irregularities. 65 Ark. 152; 145 U. S. 349; Rorer on Jud. Sales, § 132. See also 124 Ark. 219.

4. There are exceptions to the rule that the administrator can not be interested in his own sale. 33 Ark. 585; 18 Cyc. 770. The sale was not void but voidable only. Only void sales can be attacked collaterally. 55 Ark. 85; 87 *Id.* 142; 56 *Id.* 187; 105 *Id.* 5. See also 117 Ark. 544; 102 *Id.* 68. All the heirs were parties to the suit and the infant properly represented by guardian. No prejudice is shown. 42 *Id.* 22; 44 *Id.* 236. The judgment was not void. 49 Ark. 398.

5. All the appellants are barred by limitation and laches. 55 Ark. 93; Kirby's Digest, § 6248; 113 Ark. 332; 103 *Id.* 67. The married women are barred. Kirby's Digest, § 5060; 46 Ark. 37; 47 *Id.* 562; 61 *Id.* 541. The sales were judicial sales. 111 Ark. 164. They are barred by the seven-year statute and nonclaim. K. & C. Dig., § 110. The statute applies to trustees. 58 Ark. 90; 47 *Id.* 468.

6. Improvements were properly allowed. 70 Ark. 488; 95 *Id.* 167; K. & C. Dig., § 2976. There are no reversible errors in the master's account.

WOOD, J. This is an action brought by the heirs of E. H. Holloway against Joe P. Eagle and the Union Trust Company, as executors of the last will of W. H. Eagle, deceased, and Joe P. Eagle. E. H. Holloway died August 8, 1893 or 1894; his heirs were A. J. Wade, John and C. V. Holloway, Edna, Elvin and Shelby Miller, who were the children of Sarah Miller, deceased, Mary, Tom

and Roy Mason, who were the children of Allie Mason, deceased, Mrs. M. E. Naylor and LeMay Holloway Lewis. Sarah Miller and Allie Mason were the daughters of E. H. Holloway.

Action was first brought by C. V. Holloway, who was afterward joined by the other heirs, as parties plaintiff. They alleged in substance that E. H. Holloway died in possession of certain lands (describing them); that a suit was brought by W. H. Eagle & Son (a firm composed of W. H. Eagle and Joe P. Eagle), against W. H. Eagle, as administrator of the estate of E. H. Holloway; that the land described in the complaint was sold to W. H. Eagle & Son; that W. H. Eagle, a member of the firm who purchased the land, was appointed administrator of the estate of E. H. Holloway; that he was also trustee at the time of the sale, and at the time the conveyance was made by the commissioner under such sale; that the estate of W. H. Eagle, deceased, and Joe P. Eagle should be held to account for the rents and profits since the date of the sale, May 23, 1895, and they prayed that a master be appointed to state an account of this, and if it be found that the land was subject to an encumbrance due W. H. Eagle & Son, that they be allowed to redeem same.

The answer denied specifically all the allegations of the complaint and set up as a bar all the statutes of limitation and the statute of nonclaim and pleaded laches. After a great deal of testimony had been taken, the chancellor appointed L. P. Biggs, master, who was satisfactory to both parties, and directed him to examine the testimony already taken and to take further testimony; to ascertain the amount of the original indebtedness due by E. H. Holloway to W. H. Eagle & Son, the amount of rents collected, taxes paid and interest charged, and then report to the court. After the testimony was taken and the report of the master filed, many exceptions to the report of the master were filed by plaintiffs, and the court, after considering the entire record in the case, dismissed the complaint for want of equity, as to all the plaintiffs, except C. V. Holloway.

The court found that the defendant, Joe P. Eagle, was guilty of no actual fraud, but held him accountable as trustee, because he had acquired title to the lands through a purchase by W. H. Eagle & Son, and that such purchase of the lands belonging to the estate of E. H. Holloway, by its administrator, W. H. Eagle, rendered the sale voidable.

The court affirmed the finding of the master, that Joe P. Eagle was due the estate of E. H. Holloway the sum of $4,960.53, and that the plaintiff, C. V. Holloway, was entitled to one-ninth interest in said sum, towit, $551.17, with interest thereon from December 31, 1916, until paid, and rendered a decree in favor of C. V. Holloway for such sum.

From this decree C. V. Holloway prosecutes this appeal. The other heirs also prosecute the appeal from the decree dismissing their complaint for want of equity, and Joe P. Eagle cross-appealed in this court.

E. H. Holloway was indebted to W. H. Eagle & Son, and to secure such indebtedness he mortgaged to them all his personal property and real estate in Lonoke County; the mortgage covered the real estate lying north and south of what is called in the record "Bayou Meta." The lands south of Bayou Meta were subject to a prior mortgage executed by Holloway to the Arkansas Loan & Trust Company. Prior to the death of Holloway the trust company had brought suit to foreclose its mortgage; that suit was contested and found its way to the Supreme Court. After Holloway's death the case was revived in the Supreme Court in the name of W. H. Eagle, as administrator of the estate of E. H. Holloway, deceased, and the heirs of E. H. Holloway. A receiver was also appointed in this suit. The decree of the lower court was affirmed by the Supreme Court.

While suit was pending in the Supreme Court, W. H. Eagle & Son filed suit to foreclose their mortgage, and made W. H. Eagle administrator of the Holloway heirs, and the receiver appointed in the suit of the trust company, parties to that suit.

A decree of foreclosure was rendered, but no procedure was had against the lands that lay south of the bayou, they being covered by the mortgage of the trust company. The decree was rendered against the land north of the bayou and the clerk of the court was appointed commissioner to sell those lands. A decree of foreclosure was also rendered in the suit of the trust company against the lands south of Bayou Meta, and Max Frolich was appointed commissioner to make the sale of these lands. As shown in his report, "W. H. Eagle and Joe P. Eagle, composing the firm of W. H. Eagle & Son, being the highest and best bidders, became the purchaser at that sale." A report of this sale was made to the court on November 19, 1895, and a deed in pursuance to that sale was of the same date. This deed was made to J. P. Eagle, and the acknowledgment of the deed contains this recital: "On this day, Max Frolich, appointed to execute the decree rendered in this case, produces to the court here his deed to Joe P. Eagle, the purchaser of the lots and premises mentioned and described in said deed, and upon examination of said deed the same is in all things approved." In the foreclosure sale of W. H. Eagle & Son of the lands north of Bayou Meta, the deed was duly executed, and the acknowledgment was taken in open court, This deed conveyed the lands to W. H. Eagle & Son. The personal property of E. H. Holloway was foreclosed under special power conferred upon the trustee in the mortgage and was purchased by various parties at such sale, and the proceeds credited on the indebtedness of E. H. Holloway to W. H. Eagle & Son.

Joe P. Eagle conveyed the lands south of Bayou Meta to W. H. Eagle & Son on December 13, 1895, by warranty deed, the consideration expressed therein being $3,654.46. On March 3, 1900, Joe P. Eagle and wife conveyed all the lands which had been purchased at both foreclosure sales to W. H. Eagle, and on June 14, 1900, W. H. Eagle and wife conveyed the lands to Joe P. Eagle for the consideration of $5,000, $2,500 cash and $2,500 as an advancement to Joe P. Eagle.

W. H. Eagle died in 1906 and Joe P. Eagle and the Union Trust Company were named as executors of his will. No claim was filed against his estate by the heirs of E. H. Holloway; the firm of W. H. Eagle & Son and Joe P. Eagle took possession of the property, after the deeds under the foreclosure sales had been executed and made many extensive and valuable improvements thereon.

While the evidence in the trial court took a wide range and the record of it here is exceedingly voluminous, we will only discuss such of it as we deem necessary to the issues, which in our view are reduced here to a comparatively narrow compass.

*First.* The appellants seek to hold J. P. Eagle liable, as trustee, for their benefit. Joe P. Eagle did not occupy any trust relation himself to appellants, but he was cognizant of the relation which his father, W. H. Eagle, sustained to them, as administrator of the estate of E. H. Holloway. Therefore, the principal question is, was W. H. Eagle a purchaser at the foreclosure sales, and if so, did such purchase render those sales voidable? W. H. Eagle, as administrator of the estate of E. H. Holway, was party defendant in both foreclosure suits at the time the final decree was rendered.

(1) In *Eagle* v. *Terrell*, 95 Ark. 434-437, we held broadly that, ''Where property of a decedent is sold by a commissioner under order of the court, the executors or administrator can not lawfully become the purchaser at such sale. It is wholly immaterial whether the sale at which the trustee purchases is brought about at his own instance or whether it is made at the instance of another, provided he has a duty to perform with reference to the property to be sold that may be in conflict with his interest as purchaser." See the many cases cited therein.

Such sales are voidable at the instance of the heirs of the testator or intestate. See other authorities cited in 2 Crawford's Digest, p. 2185, § 147.

Joe P. Eagle testified that at the sale of the real estate belonging to the Holloway estate he bid it in to protect his debts; that he and W. H. Eagle were equal

partners; that the debts for which the land were sold were obligations to W. H. Eagle & Son; that witness had no conversation with W. H. Eagle with reference to the conveyance of the land by Max Frolich, commissioner, to W. H. Eagle; that he was the real purchaser at the sale and there was no agreement that he would purchase it and then resell or deed it to W. H. Eagle or W. H. Eagle & Son. When he deeded it to W. H. Eagle & Son the consideration was $2,500; he conveyed to W. H. Eagle & Son because he preferred that they carry the land as at that time $2,500 was a good deal of money. He bought the land in his own name. On cross-examination his attention was called to the fact that he had testified that he had purchased the land in his own name for the use of W. H. Eagle & Son, and was asked if that was a mistake and he answered, "I bought it in my own name." The report of the commissioner, which was introduced in evidence, showed that "the firm of W. H. Eagle & Son was the highest and best bidder; that he, as commissioner, did accept and take from said W. H. Eagle & Son as such purchaser, their joint and several bonds," etc. The deed was made to Joe P. Eagle and the acknowledgment recites that he was the purchaser at the sale.

The report of the commissioner for the sale of the lands north of the bayou shows that the sale was made to W. H. Eagle & Son as the highest and best bidder and the deed was executed to them. Joe P. Eagle as a member of the firm of W. H. Eagle & Son was the agent for the firm and also of his partner, W. H. Eagle, in making the purchase, and the purchase was as much the purchase of W. H. Eagle as it was for Joe P. Eagle.

(2) It can not be said in view of the above testimony that the finding of the chancellor to the effect that W. H. Eagle was the purchaser at the foreclosure sale is against a clear preponderance of the evidence.

(3) *Second.* The next question is, were the plaintiffs barred by any of the statutes of limitations? Joe P. Eagle was not himself the administrator of the estate of E. H. Holloway and was not therefore trustee of an

express trust; he can only be held liable on the theory that he acquired property from the trustee of an express trust with the knowledge of all the circumstances going to show that the trustee was deeding the trust property, and therefore had no title he could convey. Upon this theory and this alone can Joe P Eagle be held as trustee with reference to the property of the estate. This is the theory upon which the court rendered its decree. See *Matthews* v. *Simmons*, 49 Ark. 468-475.

Perry, in his work on Trusts, volume 2, section 860, lays down the doctrine that, "If a trustee, in breach of his trust, conveys the land to a third person, such third person, if he is an innocent purchaser, for value, without notice, will hold the estate discharged of the trust. But if he received the conveyance with notice, or without paying any consideration, he will be holden as a trustee; for the *cestui que trust* may enforce the trust against him by proceeding in equity. * * * It may be said, that the relation between such holder of the legal title and the *cestui que trust* is that of trustee and *cestui que trust,* and that the same principles apply, respecting the application of the statute, as apply between trustee and *cestui que trust* in an express trust."

(4) The same author in section 863 says: "As between trustee and *cestui que trust,* in the case of an express trust the statute of limitations has no application, and no length of time is a bar. Against an express and continuing trust time does not run until repudiation or adverse possession by the trustee and knowledge thereof on the part of the *cestui.*" See also 39 Cyc., p. 600.

In *Bland* v. *Fleeman,* 58 Ark. 84-90, we said: "The rule, we believe, is universally established that the statute will not bar an express trust. 'But this doctrine,' says Chief Justice COCKRILL, in *McGaughey* v. *Brown,* 46 Ark. 34, 'is subject to two qualifications, namely, that no circumstances exist to raise a presumption of the extinguishment of the trust, and that no open denial or repudiation of the trust is brought home to the knowledge of

the parties in interest which requires them to act as upon
an asserted adverse title.' ''

By analogy, courts of equity take the same limitation
for their guide that governs courts of law. *McGaughey*
v. *Brown, supra.*

Immediately after the sales W. H. Eagle and Joe P.
Eagle commenced to deal with the lands as their individ-
ual property; they made conveyances of the lands back
and forth, the one to the other; they went into posses-
sion and made valuable improvements, enjoying the rents
and profits. After the death of W. H. Eagle in 1906, ad-
ministration was immediately had upon his estate, and the
same was practically fully administered before this suit
was brought in 1913. No demand was made by any of
the heirs of E. H. Holloway upon W. H. Eagle or Joe P.
Eagle. They all lived in the community and were cogni-
zant of the facts, or had notice of facts and circumstances
that would put a man of ordinary prudence and intelli-
gence on inquiry, which in law is tantamount to knowl-
edge of the facts to which such inquiry might lead. *Bland*
v. *Fleeman, supra.* All the heirs of E. H. Holloway who
were of age at the time of the sales, except the married
women, would be barred by the seven years as well as
the five years statute of limitations. Secs. 5056 and 5060,
Kirby's Digest. The female heirs, who were alive and
married at the time of the sales and their children would
be barred by the five-year statute of limitations, because
that statute does not except married women, and fore-
closure sales are judicial sales. *McGaughey* v. *Brown,*
*supra; Garland County* v. *Gaines,* 47 Ark. 558; *McKneely*
v. *Terry,* 61 Ark. 541; *Gibson* v. *Herriott,* 55 Ark. 85;
*Nash* v. *Delinquent Lands,* 111 Ark. 164.

It follows that all the appellants, except C. V. Hol-
loway, are barred by the statute of limitations. They
are also barred, under the same facts by laches, although
in the latter case the rule as to limitation is not neces-
sarily a criterion—the time may be longer or shorter,
depending upon the particular facts and circumstances
in each case. *Gibson* v. *Herriott, supra.*

(5)   C. V. Holloway is not barred by the statute of limitation for the reason that he was a minor at the time of the sales, and he instituted this suit one day before the expiration of the three years limit after reaching his majority.   Kirby's Digest, § 5056.   Neither is he barred by laches, because he was not *sui juris* at the time of the sales.   ¡While laches could not operate to give him any additional rights, yet a court of equity during the continuance of his minority will not impute to him laches and thus deprive him of the right to sue for his inheritance before the period of limitation applicable to him had expired.   *Gibson* v. *Herriott, supra,* page 97.   See also *Stuckey* v. *Lockard,* 87 Ark. 232-240, on rehearing.

*Third.*   This brings us to a consideration of the amount of the decree in favor of C. V. Holloway.   The master's report shows that "all the attorneys agreed with him that the account which he was directed to make should be stated upon the theory that Joe P. Eagle was a trustee," and that was the theory he adopted.   His report shows that he made an exhaustive examination of the evidence that was taken both prior to and after his appointment and made an elaborate report after reviewing the items of the account as rendered in the statement of the expenditures made by Joe P. Eagle in connection with the lands belonging to the estate of E. H. Holloway with which he charged the estate, and of the rents, profits and proceeds of the sale of the land, with which he credited such estate.

It would be wholly impracticable to set out and discuss in detail in this opinion all the evidence bearing upon this issue.   The appellants specifically excepted to the finding of the master, charging 10 per cent. interest on the judgments rendered in favor of W. H. Eagle & Son, from November, 1894, to July, 1916, principal and interest amounting in the aggregate to $10,367.43.   They also specifically excepted to the finding of the master, charging them with any permanent improvements.

In regard to the interest item, the master's report is as follows: "Plaintiffs claim credit by way of error

against them in the computation of interest in the decree of November 21, 1894. It is apparently true that the amount of the debt and interest does not coincide with the amount of the judgment, but on account of certain credits mentioned one can not be positive to the calculation. Since the decree stood the scrutiny of the court and plaintiffs' counsel, we ought to assume that they knew what they were doing, and since we do not know what circumstances may have entered in the calculation of this decree I hesitate to correct the seeming error, even if I had the legal right. While I have charged and credited the estate with all the items practically as set forth in the statement filed by Mr. Eagle, I differ with his account as to the method of figuring interest. In his statement Mr. Eagle charges the estate the judgments with interest at 6 per cent. and 10 per cent. from the date thereof until date of payment; all the judgments bear 10 per cent. interest, except $407.94.''

In their brief in regard to these specific exceptions, the counsel for appellees say that ''the master charged the plaintiffs (appellants here) with the highest rate of interest, towit, 10 per cent. in rendering all statements, and gave appellees credit for commissions on sales of land, etc. * * * It would take too much space to set out all the items, but we think we have covered the different classes of items.''

(6) Appellants contend that the judgments awarding interest at 10 per cent. should not have been considered at all, but that the master should have gone back to the original mortgage and calculated the interest on that. Appellants have not brought into the abstract any evidence tending to prove that the master's computation of interest was incorrect. The master's report shows that he had before him the debt, and while there was apparently a discrepancy between the amount of the debt and interest and the amount of the judgment, yet on account of certain credits mentioned he could not be positive of the calculation, and he assumed that the court and counsel for both parties knew what they were about in per-

mitting the decrees to be rendered bearing 10 per cent. interest. Counsel are mistaken in saying that these judgments should not have been considered at all. Since appellants have elected to treat J. P. Eagle as trustee, the judgments were competent as evidence to be considered by the master in making up his report; he had before him the mortgages which formed a basis for these judgments and it was competent for him to consider them together, and all the evidence taken in connection therewith in ascertaining what was the correct amount of interest to be charged.

The testimony of Judge Thos. C. Trimble, who as attorney was connected with all the suits, and thoroughly familiar with all the transactions, shows that the judgments were based on debts that bore interest at the rate of 10 per cent. His testimony was also based upon the papers that were exhibited to him, which counsel for appellant abstract by saying, "As these things are all set out in the master's report we think it unnecessary to abstract them further." Counsel for appellants in their abstract of the master's report do not set out any of these papers which the master had before him as evidence. Appellants therefore do not make it appear that there was any error in the findings of the master allowing Joe P. Eagle 10 per cent. interest on the judgments in favor of W. H. Eagle & Son. The chancellor did not find any error in this respect, and the finding of the chancellor is sustained by a preponderance of the evidence. Indeed, there is no evidence in the abstract to the contrary.

(7) *Fourth.* The other specific exception of appellants to the finding of the master is that he erred in charging C. V. Holloway with any improvements whatever, their contention being that C. V. Holloway could only be charged with the expense of the necessary repairs in making the crops, but not with any permanent improvements. To support their contention, appellants cite and rely upon cases dealing with the trustee of an express trust created by contract or operation of law. Such, for exam-

ple, as administrators, executors, guardians, etc., or such as a trustee under a deed or other instrument declaring an express trust, or such as a tenant in common in possession or a mortgagee in possession, or any one in possession of lands which he knows he does not own. But this case is controlled by a different doctrine from that applicable to any of the above cases. Joe P. Eagle, as we have seen, is not the trustee of an express trust. None of the duties of such a trustee devolved upon him. As is said in *Matthews* v. *Simmons, supra,* "he only becomes a trustee by construction of law," and is only liable because of that ancient maxim, *ignorantia legis neminem excusat.* The chancery court found that he was guilty of no fraud. One witness testified that Joe P. Eagle asked him not to bid at the sale. Another testified that she went to Lonoke on the day of the sale, arriving between 8 and 9 o'clock, and that when she arrived the sale had already been held. She intended to bid on some of the land and asked Joe P. Eagle "if he didn't have the sale rather early, and he said yes, but there was nobody else coming in to bid." He also said he would let witness have what land she wanted at the price for which he bought it in. He did not let her have the land she wanted, but some other land. Joe P. Eagle in his testimony denied categorically the above statements. We are unable to determine where the preponderance lies in this issue, and will therefore treat the finding of the trial court as persuasive and adopt it as our own. *Leach* v. *Smith,* 130 Ark. 465.

Therefore, since Joe P. Eagle was guilty of no actual fraud, but purchased the land in good faith, doubtless in absolute ignorance of the legal effect of such purchase, and believing he was acquiring a perfect title, he must be dealt with in making the settlement, as the rule of equity and good conscience demands in such cases. After a careful reading and consideration of the master's report as contained in the record itself, and the testimony as abstracted, we are convinced that the master did not depart from the above rules, but on the contrary observed

the same according to the doctrine announced in *Stubbs v. Pitts,* 84 ,Ark. 160: ''Where a constructive trust was decreed, credit will be allowed for the purchase money paid,·with interest, and the value of improvements made, and will be charged with the rental value of the land during the period of such possession.''

The decree is correct and it is affirmed.