## MURPHY v. KERR.

(Circuit Court of Appeals, Eighth Circuit. April 30, 1925.)

No. 6734.

1. Covenants ⊂⊃53 — Intent that covenant should not run with land not indicated by absence of specific statement that it should so run.

Absence from deed of specific statement that covenant should run with land does not indicate that it was intended not to do so; the customary method of creating a covenant running with the land not being by use of such a statement, but by clearly expressing in the covenant grantor's agreement that it shall bind his assigns, those to whom the title to the land he retains shall subsequently pass, as well as himself.

2. Covenants ⊂⊃70—Intent to have covenant to pump water run with land held indicated by terms thereof.

Terms of covenant to have water pumped to reservoir on land conveyed *held* to leave no doubt that grantor intended it to run with the land, and vest in grantee an easement and water right in the lands retained by grantor, and the dam and power plant thereof, while owned by her assigns.

## 3. Covenants ⬦70—Affirmative covenant may run with land.

An affirmative covenant, as one to pump water to reservoir, as well as a negative or restrictive covenant, may run with the land.

## 4. Easements ⬦1—Essential qualities stated.

Essential qualities of an "easement" are that it is an incorporeal right, appertains and relates to two distinct corporeal properties, a dominant property, to which the right to it belongs, and a servient estate, on which its obligation or burden is imposed, and it must be substantially beneficial to the dominant property, and generally rests in a written grant or covenant, and ordinarily there is privity of estate between the properties.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Easement.]

## 5. Waters and water courses ⬦154(1)—Covenant to pump water to reservoir on granted land held to create easement in grantor's remaining land and plant.

Covenant running with land to pump water from river to reservoir on granted land held, to give grantee a water right and easement in grantor's remaining land and the dam and power plant thereon.,

## 6. Appeal and error ⬦843(2) — Suggested questions, which have not yet arisen, not discussed.

Questions suggested that, if decree be affirmed, suit for specific performance of duty imposed thereby, by reason of easement, on company in hands of receiver, to pump water from its lands to defendant's, will probably be instituted, and that a court of equity will probably be without jurisdiction to compel discharge of that duty, will not be discussed, as they have not yet arisen, and probably never will arise.

Appeal from the District Court of the United States for the District of New Mexico; Orie L. Phillips, Judge.

Suit to quiet title by William F. Murphy, receiver of the Carlsbad Light & Power Company, against Cesarine A. Kerr. From an adverse decree (296 F. 536), complainant appeals. Affirmed.

John F. Simms, of Albuquerque, N. M., for appellant.

C. J. Roberts, of Santa Fé, N. M., for appellee.

Before SANBORN and LEWIS, Circuit Judges, and POLLOCK, District Judge.

SANBORN, Circuit Judge. On May 9, 1907, Mary E. Tansill was the owner of a tract of land in the county of Eddy, N. M., through or adjoining which the Pecos river flowed, and on that day she conveyed a part of that land, which for convenience will be called tract A, by a warranty deed, which was recorded forthwith, to Cesarine A. Lew-is, who is now Cesarine A. Kerr and the defendant in this suit. At that time there had been for many years, was, and still is on that part of Mrs. Tansill's land which she did not then convey, herein called tract B, a dam across the Pecos river, a power plant and suitable pipes and connections operated by the power derived from the use of the water impounded by the dam, by means of which she had for many years caused and was causing water from the river to be pumped up and delivered into a large reservoir on tract A about 80 feet higher than the power plant, and for many years she had been using and was then using the water from this reservoir to irrigate tract A and for other beneficial purposes. She had also used and was using and thereafter continued to use the water so impounded by the dam by means of the power plant to generate and to supply to the residents of Carlsbad, N. M., electricity for power purposes. The warranty deed by which she conveyed tract A to the defendant recited a consideration of $10,000, and contained, in addition to the customary terms of such a deed, this agreement and covenant:

"The party of the first part hereby agrees and binds herself, her heirs, executors, administrators and assigns to have water pumped from the Pecos river at what is known as the Tansill power dam to the reservoir located upon the property herein conveyed not to exceed eight hours per each day of twenty four (24) hours, it being understood that the second party, her heirs, executors, administrators and assigns is entitled to have the water pumped as herein provided whenever she so demands of the persons in charge of said power dam and the plant in connection therewith, and the party of the first part further agrees and binds herself, her heirs, executors, administrators and assigns, to make provision for having said water pumped as herein provided by any purchaser, lessee or lessees of said power plant located as aforesaid to whom she or her successors may sell, rent or lease the same. This agreement to pump water as aforesaid shall be binding upon the first party, her heirs, executors, administrators, and assigns, so long as said power dam or any substitute therefor may be maintained by her, her heirs, executors, administrators, and assigns."

The defendant took possession under this deed of tract A on May 9, 1907, and has since occupied and used that tract as her residence and home. On July 9, 1919, Mrs. Tansill conveyed, for a recited consideration of $40,000, to the Carlsbad Light & Power Company, a corporation, 11 acres of tract

B, the power dam upon and adjoining it, the power plant, and all their appurtenances. At some time prior to December 16, 1922, the complainant, William F. Murphy, was appointed the general receiver of the Carlsbad Light & Power Company by the court below under the laws of New Mexico on account of the insolvency of that corporation. From the day Mrs. Tansill delivered her deed to the defendant in May, 1907, until the day she conveyed the 11 acres of tract B, the dam, power plant, and their appurtenances to the Carlsbad Company in July, 1919, she pumped the water to the reservoir on tract A, and complied with all the terms of the covenant in that regard in her deed to the defendant, and from the time she conveyed the 11 acres, the dam, power plant, and appurtenances to the Carlsbad Company, until after the complainant was appointed receiver thereof, that corporation complied with the terms of that covenant, and supplied the water to the reservoir of the defendant.

On December 16, 1922, however, the complainant, as receiver of the Carlsbad Company, brought suit to quiet the title to that 11 acres and the dam, power plant, and appurtenances against the claim of the defendant to the performance by the corporation and its receiver of the covenant in the deed to the defendant to supply her land and reservoir with water. The defendant answered that that covenant ran with the land and vested in her a water right—an easement—in the 11 acres, the dam, power plant, and appurtenances to the pumping and supply by the Carlsbad Company and its receiver of water to her reservoir and land according to the terms of the covenant. Evidence was received, a final hearing was had, and the court in an elaborate opinion (296 F. 536) sustained the claim of the defendant and rendered a decree that the complainant take nothing by his complaint, and that the title of the defendant to her right to have water pumped from the Pecos river by the Carlsbad Company and its receiver to her reservoir on tract A in accordance with the covenant and deed to her be confirmed and quieted. From this decree the complainant has appealed.

[1, 2] Counsel for the receiver concedes that the covenant in the deed to the defendant was a legal and binding obligation upon Mrs. Tansill, the grantor, but he maintains that it did not run with the land; that it did not burden tract B, which she retained, with any easement or water right in that tract, or any part of it, after her conveyance thereof to the grantee, the Carlsbad Company. He argues that she never intended that her covenant should burden and run with the land she retained (1) because she made no statement in her deed to the defendant that her agreement "to have water pumped" was to run with the land; and (2) because she did in that covenant expressly "bind herself, her heirs, executors, administrators, and assigns, to make provision for having said water pumped as herein provided by any purchaser, lessee, or lessees of said power plant located as aforesaid to whom she or her successors may sell, rent, or lease the same." But the absence from the deed of the specific statement that the covenant should run with the land fails to indicate that the grantor did not intend that it should so run, because the use of such a statement is not the usual method of creating a covenant running with the land. The customary method of creating such a covenant is clearly to express in the covenant which the grantor intends shall run with the land the grantor's agreement that this covenant shall bind his assigns, those to whom the title to the land he retains shall subsequently pass, as well as himself. This Mrs. Tansill did three times. Her covenant reads: (1) "The party of the first part hereby agrees and binds herself * * * and assigns to have water pumped * * * to the reservoir located upon the property herein conveyed;" (2) "and the party of the first part further agrees and binds herself, * * * and assigns, to make provision for having said water pumped as herein provided by any purchaser, lessee," etc.; and (3) "this agreement to pump water as aforesaid shall be binding upon the first party, * * * and assigns so long as said power dam * * * may be maintained by her, her heirs, executors, administrators and assigns." A thoughtful consideration of these terms of the covenant leaves no doubt that Mrs. Tansill intended that this covenant to pump the water should run with the land, and should vest in the defendant an easement and water right in the 11 acres, the dam, power plant, and appurtenances, while owned by her assigns, to have the water pumped into the reservoir of the defendant on tract A in accordance with the provisions of the agreement.

[3] The next position of counsel for the receiver is that the covenant to pump and supply the water to the reservoir of the defendant is an affirmative covenant, a covenant actively to perform it, and that, while restrictive or negative covenants to suffer or not to do may run with the lands, affirmative covenants may not do so. He cites and is sustained in this contention by Miller v. Clary, 210 N. Y. 127, 103 N. E.

1114, Ann. Cas. 1915B, 872, L. R. A. 1918E, 222, and some English cases; but the overwhelming weight of reason and of authority in the United States is otherwise, and the established law upon this subject here is that affirmative covenants as well as negative or restrictive covenants run with the land of the covenantor and with the land of the covenantee to which they relate. Shaber v. St. Paul Water Co., 30 Minn. 179, 182, 183, 184, 14 N. W. 874; Adamson v. Black Rock Power & Irrigation Co. (C. C. A.) 297 F. 905, 912; Bolles v. Pecos Irrigation Co., 23 N. M. 32, 40, 41, 42, 167 P. 280; Sexauer v. Wilson, 136 Iowa, 357, 113 N. W. 941, 942, 943, 14 L. R. A. (N. S.) 185, 15 Ann. Cas. 54; 2 Tiffany, Real Property (2d Ed.) pp. 1429, 1430, § 395; Hinchman v. Consolidated Arizona Smelting Co. (D. C.) 198 F. 907, 911; 3 Pomeroy's Equity Jurisprudence (4th Ed.) § 1295, p. 3124, where the author writes: "I have, as it will be seen, continued to state the doctrine in its most general form as applying to affirmative as well as to restrictive covenants, and as rendering the owner liable to the affirmative duty of specifically performing the covenant, as well as to the negative remedy of restraint from violating it, notwithstanding the very recent decisions by the English court of appeal holding that the doctrine applies only to restrictive covenants, and does not extend to those which stipulate for affirmative acts. In my opinion, the doctrine has been fully established, in its most general form, without such limitation, by the overwhelming weight of authority, English and American."

[4, 5] Counsel for the defendant asserts and counsel for the receiver denies that the covenant in the deed to the defendant and the latter's purchase and acceptance thereof vested in her a water right and easement in the 11 acres, the dam, power plant, and its appurtenances, to the pumping of the water according to the terms of the covenant by the Carlsbad Company, or any subsequent assign or immediate or remote grantee of the 11 acres and the dam, power plant, and appurtenances. Essential qualities of an easement are that it is an incorporeal right, that it appertains and relates to two distinct corporeal properties, a dominant property, to which the right to it belongs, and a servient property, upon which its obligation or burden is imposed. It must be substantially beneficial to the dominant property, and a private easement generally rests in a written grant or covenant, and ordinarily there is privity of estate between the properties. A thoughtful comparison of these essential qualities of an easement with the water right of the defendant to the pumping of the water to her reservoir based on the covenant in Mrs. Tansill's deed to the defendant demonstrates the fact that it possesses every one of these qualities, and the rational and logical result is that there was no error of law or mistake of fact in the decision and decree of the court below that the defendant had a water right and easement in the 11 acres, dam, and power plant of the Carlsbad Company for the pumping of water from the Pecos river into her reservoir in accordance with the terms of the covenant in Mrs. Tansill's deed to her. Fitch v. Johnson, 104 Ill. 111, 120, 121; Bolles v. Pecos Irrigation Co., 23 N. M. 32, 40, 41, 167 P. 280; Snow v. Abalos, 18 N. M. 681, 140 P. 1044; Grand Valley Irrigation Co. v. Lesher, 28 Colo. 273, 65 P. 44, 48, 49; Carr v. Lowry's Adm'x, 27 Pa. 257, 258; West v. Probst (Tex. Civ. App.) 251 S. W. 289, 291, 292.

[6] Finally, the receiver's counsel suggests that, if the decree below be affirmed a suit for specific performance of the duty imposed upon the Carlsbad Company and its receiver will probably be instituted, and that a court of equity will probably be without jurisdiction and power to compel the discharge of that duty by the receiver or the insolvent corporation. This court must decline to enter upon the discussion of the question or questions thus suggested, because they have not yet arisen and probably never will arise. The rights and duties of the parties to this litigation have now been considered by the court below and by this court with some care and thought, and they have been decided. The property of the Carlsbad Company is held by the court below by its receiver in trust, to be administered and applied in accordance with the respective rights and equities of the parties interested therein, and to that court the power has been given, and upon it the duty has been imposed, so to apply and administer the property and its proceeds by the present or some other receiver. The water right and easement of the defendant in the 11 acres, the dam, power plant, and appurtenances were created in May, 1907. They are prior in time and superior in equity to the rights in that property of the Carlsbad Company, its creditors, and any other party claiming a right or interest therein that arose subsequent to May, 1907. A court of equity may vary, qualify, restrain, and modify the remedy it applies, so as to avoid inequity and to do equity to the adverse claims and substantial rights of the parties in interest, and we do not doubt

that this will be readily and easily done by the court· below.

The decree below is affirmed.