LAWHON *v.* AMERICAN CYANAMID & CHEMICAL CORP.

4-8936                                                  223 S. W. 2d 806

Opinion delivered October 31, 1949.

24

*Rolland A. Bradley* and *Francis T. Donovan,* for appellant.

*Ashley Cockrill,* for appellee.

GEORGE ROSE SMITH, J. This suit was brought by the appellants, Cullen and Willie Jane Lawhon, against the appellees, American Cyanamid & Chemical Corporation (herein called the Corporation) and American Cyanamid Company (called the Company). In the trial court the case was decided on demurrer to the complaint.

It is alleged that in 1943 the appellants bought 400 acres of land in Pulaski County, subject to outstanding mineral ownerships and to a twenty-five year bauxite lease. (We interpret the complaint to mean that appellants acquired no interest in the bauxite, and this opinion is written on that assumption.) The lease, a copy of which is attached to complaint, was executed in 1933 by the former owners of the land to the appellee Corporation. It is averred that in 1944, after appellants had bought the surface interest, the appellees entered the

premises and began mining bauxite. Four grounds for relief are stated in the complaint:

(1) The appellees in their mining operations have drained Rauch Lake, the water supply for appellants' livestock;

(2) The appellees have deprived appellants of the use of specified parts of their property by depositing thereon huge and unsightly piles of overburden;

(3) The appellees have failed to supply appellants with a plat and log of each test for bauxite, as required by the lease;

(4) The appellees have failed to release to appellants all lands upon which no bauxite has been found, as required by the lease.

In response to the complaint the appellees filed a combined motion to dismiss and demurrer. The Corporation moved to dismiss, on the ground that it has transferred its lessee interest to the Company, withdrawn from the State and surrendered its corporate charter. The Company in the same pleading demurred to the complaint, upon the ground that a cause of action is not stated and that the complaint is barred by limitations and laches.

The chancellor sustained the demurrer as to the first and second counts in the complaint and overruled it as to the third and fourth. All parties refusing to plead further, a decree was entered dismissing the first two counts and directing the appellees to comply with the lease provisions described in the remaining two counts. The entire case is brought to us by appeal and cross-appeal.

We turn first to the fourth count in the complaint. The lease provides that "as soon as lessee has explored the above described land, in conformity to the terms of this lease, it will release to lessors all of said premises upon which it finds no bauxite and/or such as it does not desire to mine." The appellees contend that only the lessors can enforce this clause of the lease; the appellants construe it as a covenant running with the land.

Few questions have given rise to greater conflict in the decisions than that of what covenants run with the land. In spite of the widely divergent views that have been expressed as to some types of covenant, there is fairly general agreement upon the principles applicable to the covenants involved in this case. If a covenant is of value to the covenantee by reason of his occupation of the land, ordinarily it is regarded as running with the land. Tiffany on Real Property (3rd Ed.), § 854. Our own cases have defined a covenant running with the land as one that benefits the land itself. *St. L., I. M. & S. Ry. Co. v. O'Baugh,* 49 Ark. 418, 5 S.W. 711; *Bank of Hoxie v. Meriwether,* 166 Ark. 39, 265 S.W. 642. The two views just stated are entirely harmonious, for a covenant that may be said to benefit the land itself is of value to the covenantee primarily because he is entitled to occupy the land and enjoy the benefit.

The covenant now under consideration requires the lessee to release lands upon which no bauxite has been found or which it does not desire to mine. The intent is manifestly to benefit the surface owner in his occupancy of the property, since the release enables him to cultivate or make other use of the released land without fear of being interfered with by mining operations. Under the rules stated above this covenant runs with the surface ownership and may therefore be enforced by the appellants. The demurrer was properly overruled as to the fourth count.

The covenant relied upon in the third count provides that the lessee shall furnish to the lessors a log of each test made upon the premises, a chemical analysis of all samples taken, and a plat showing the location of all tests made. These provisions of the lease are of no concern to the surface owner, their purpose being to supply the lessors with information about the lessee's development of the leasehold and the progress of mining operations. This covenant is enforceable by the lessors and their successors, not by the surface owners. The demurrer to this count must be sustained.

The first count alleges that in violation of the terms of the lease the appellees drained a lake on appel-

lants' cattle lot. The phrase "in violation of terms of the lease" is a conclusion of law, not admitted by the demurrer. *Wood v. King,* 57 Ark. 284, 21 S.W. 471. We must therefore examine the lease to see whether the facts that are stated—the draining of the lake on the cattle lot—show a violation of the lease. There is no specific prohibition against the draining of surface water. The lessee is given power to open and maintain mines, to remove bauxite, to remove overburden, and to do various other acts in connection with the powers granted. This authority is broad enough to include the draining of a lake if necessary in the course of removing the bauxite.

Appellants insist, however, that these powers do not extend to interference with the cattle lot, because of this clause in the lease: "The premises surrounding the present homestead of lessors, such as yards, gardens and lot for cattle, shall not be disturbed by lessee during the lifetime of lessors, unless by mutual consent." Ordinarily this covenant would run with the land, under the principles already stated. But the authorities agree that the parties to a covenant, by indicating their intention to that effect, may prevent a covenant from running even though it would otherwise do so. Tiffany, *supra,* § 854. We think this clause does show an intention to make the covenant personal to the lessors. It refers to their present homestead and is to be effective only during their lives. While the covenant is of value to the lessors because of their occupancy of the land, the benefit is intended to be peculiar to them and not to extend to succeeding owners of the property. Since the right to enforce this covenant did not pass to appellants, the first count does not state a cause of action.

The remaining count concerns interference with appellants' occupancy of the premises, occasioned by the piling of overburden upon the property. As we have seen, this is the type of covenant they may enforce if a violation of the lease is stated in the complaint. The lease has two clauses with reference to the disposition of the overburden that accompanies strip-mining. Paragraph 1 authorizes the lessee to remove overburden "and

to deposit same at such places on said land as it may deem convenient." Paragraph 9, however, states: "If in the discretion of lessee it may be necessary to remove overburden in its mining of bauxite, said overburden shall be placed on said premises so as not to inconvenience the other occupants of said premises or the public." It is our duty to reconcile these apparently conflicting clauses if possible, so that effect will be given to each. This can be done only by holding that the broad authority granted in Paragraph 1 is limited to the extent set forth in the later paragraph. Construed liberally upon demurrer, the complaint sufficiently alleges a violation of the lease as so interpreted. The demurrer to the second count must be overruled.

Only a few words need be said in answer to the contention that the complaint discloses on its face that the statute of limitations has run. This argument is directed primarily to the first count, to which the demurrer has already been sustained. The counts which state causes of action are not barred on the face of the pleadings, for the development of the proof may show that the injuries asserted are of a continuing nature.

Counsel for both sides treat the Corporation as a party to this appeal, but we do not see how it is involved. It merely filed a motion to dismiss, upon which there appears to have been no hearing or other action. Even though the motion to dismiss was combined with the Company's demurrer, its allegations cannot be considered as true in passing upon the demurrer; for our code practice, like the common law, does not recognize a speaking demurrer. *Percifull v. Platt,* 36 Ark. 456. It follows that this opinion goes only to the controversy between appellants and the Company.

We affirm the chancellor's disposition of the first and fourth counts; in other respects the decree is reversed and the cause remanded.

McFADDIN, J., concurs.