## NORDIN v. MAY.

No. 14258.

United States Court of Appeals
Eighth Circuit.

April 27, 1951.

James T. Gooch, G. D. Walker, Little Rock, Ark. and T. S. Lovett, Jr., Star City, Ark., submitted brief for appellant.

E. W. Brockman and E. W. Brockman, Jr., Pine Bluff, Ark., submitted brief for appellee.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a summary judgment dismissing an action brought by Andrew Nordin against W. D. May for an injunction and damages. The action is based upon the claim that May, the lessee of a sawmill and steam plant, was

obligated to furnish steam power at cost for the operation of an adjoining dry kiln and hardwood flooring plant owned by Nordin, and had failed and refused to do so. Jurisdiction is based on diversity of citizenship and amount in controversy.

The record is meagre and consists mainly of the pleadings, the motion for summary judgment, and an affidavit and a statement of May. Apparently the facts relative to the issue of liability were not seriously in dispute. The District Court and counsel evidently knew more about them than we can glean from the record on appeal. The brief of the appellant contains the following "Statement of the Case", and, since its accuracy is not challenged by the appellee, we shall assume its correctness for the purpose of this opinion:

"Each party to this appeal is in possession of a tract of land formerly owned by the Star City Lumber Company. On the tract owned by the appellant, Andrew Nordin, there is situated an oak flooring plant and three kilns used to dry lumber preparatory to processing it into flooring. On the adjacent tract which is occupied by the appellee, W. D. May, as lessee, there is situated a sawmill operated by steam power. During the time when both plants were owned by the Star City Lumber Company, steam from the sawmill power plant was used to heat the kilns on the oak flooring plant property.

"On February 19, 1947, the Star City Lumber Company executed to the appellant, Andrew Nordin, a mortgage securing advances made by Nordin, which mortgage conveyed as security the oak flooring plant only. This mortgage was duly acknowledged and recorded immediately. The mortgage contained the following provision:

'In the event of foreclosure of this mortgage, or in the event the mortgagee becomes the mortgagee in possession of said mortgaged premises, the parties of the first part hereby contract and agree and bind themselves, their successors, heirs, and assigns to furnish to the purchaser or owner of said hardwood flooring plant and dry kiln or the mortgagee in possession thereof, sufficient steam power to operate said hardwood flooring plant and dry kiln. The charge for furnishing said steam power shall be the actual cost to said parties of first part, their successors, heirs or assigns.'

"Subsequently, the Star City Lumber Company defaulted in payment of the mortgage and the appellant Andrew Nordin brought suit in the United States District Court for the Eastern District of Arkansas for foreclosure of his mortgage, together with other mortgages held and acquired by him on the same property, which suit resulted in a decree of foreclosure and the sale of the property to Nordin on August 4, 1950, which was duly concluded with delivery and approval of the Commissioner's Deed.

"The adjacent tract on which the sawmill is situated was mortgaged by the Star City Lumber Company to one Alsobrook. The lumber company defaulted in payment of that mortgage also and Alsobrook brought a foreclosure suit in the Chancery Court of Lincoln County, Arkansas, which had not been concluded at the time of trial of the instant case. A receiver was appointed by the Chancery Court of Lincoln County in Alsobrook's suit and by written lease agreement the receiver leased the sawmill property to the appellee W. D. May for a term of seven months, beginning March 10, 1950.

"According to May's statement, before leasing the property he consulted with Nordin about furnishing steam to the dry kilns and agreed that he would furnish the steam in return for the use of one kiln. As he put it, 'at that time this was temporary until he could find out about the title.' They began operations under this oral agreement and after two or three months, because of expansion of Nordin's operations in the flooring plant, it was agreed that May should use only one-half a kiln in return for furnishing the steam. After Nordin acquired title to the property, he called May's attention to the provision in the mortgage upon which Nordin's foreclosure was based— that the Star City Lumber Company, their successors, heirs and assigns should

furnish to the purchaser or owner of the hardwood flooring plant sufficient steam power to operate the dry kiln at the actual cost. Nordin stated that because of expansion of his operations it was necessary to have the complete use of the kiln and he demanded that steam power be furnished in accordance with the agreement. It is not denied that Nordin has been at all times ready, willing and able to pay any sums due as the cost of steam furnished by the appellee. May denied that he was bound by the agreement in the Star City Lumber Company mortgage (referred to in his statement as Horne's obligations because Horne was the principal owner) and refused to furnish steam except in return for the use of a kiln. After some dispute, May cut off the supply of steam, thereby stopping the operation of the plant. This suit followed with a prayer for a temporary restraining order to prevent May from stopping the supply of steam, and for damages.

"Motion for summary judgment on the issue of liability alone was filed by the plaintiff, Nordin. There was virtually no dispute as to the material facts. After considering briefs and argument, the Court concluded that the agreement in Nordin's mortgage for the furnishing of steam to the kiln was not a covenant running with the land binding upon May. Memorandum opinion was filed October 12, 1950, and since plaintiff's cause was predicated entirely upon the theory that the agreement was a covenant running with the land and could not be sustained otherwise, an order of dismissal was entered October 17, 1950. Notice of appeal was filed November 7, 1950."

The grounds stated by the District Court for its conclusion that the covenant in the mortgage to Nordin did not run with the land and was not binding upon May, are, in substance as follows: (1) In the foreclosure proceedings under which Nordin acquired title to the flooring plant property, the covenant was treated as personal, and was not made an issue in those proceedings nor reserved in the decree or in the deed of foreclosure. (2) The covenant did not describe the tract from which the steam power was to be furnished by the Star City Lumber Company and its successors and assigns. (3) The mortgage to Alsobrook covering the sawmill and steam plant property contained no covenant that the mortgagee, his heirs, successors or assigns, were obligated to furnish steam power for the operation of the flooring plant pursuant to the covenant in suit. (4) The record title of the land leased to May contained nothing which would constitute constructive notice of the existence of the covenant. (5) At the time May leased the sawmill property, he had no actual notice of the covenant. (6) The existence of the connection between the sawmill steam plant and the flooring plant and dry kilns was not notice to May of the existence or terms of the covenant. (7) The property leased to May is in the custody of the Chancery Court of Lincoln County, Arkansas, and the custody of that court should not be interfered with.

Nordin contends: (1) that the covenant in suit is a covenant running with the land, since it affects and benefits the flooring plant property and was, by its terms, binding not only upon the Star City Lumber Company, but upon its successors and assigns; and (2) that the fact that the covenant did not describe the land upon which the sawmill and steam plant were located did not invalidate the covenant or affect its enforceability as against May, since the land was readily identifiable and the existence of the steam connection between the two adjacent plants was visible.

May contends that the covenant to furnish steam power at cost from an unspecified location did not run with the land and was not binding on May, because: (1) the covenant was personal to the Star City Lumber Company and Nordin; (2) there was no reference to that covenant in the lease to May or in the decree of foreclosure of either the Nordin mortgage or the Alsobrook mortgage; (3) it was the intention of Nordin and May to conduct their operations according to a verbal agreement under which May was to furnish steam power to Nordin in exchange

for the use of kiln space; (4) May was not informed of the covenant until the verbal agreement had been carried out, and only after the entry of the decree of foreclosure of Nordin's mortgage, which decree did not perpetuate the covenant; and (5) the covenant failed to identify the source of the steam power to be furnished.

If the covenant ran with the land and was binding upon the Star City Lumber Company, its successors and assigns, we think there is no basis in the record for holding that the covenant was cut off by the foreclosure of the mortgages given by that partnership to either Nordin or Alsobrook. Nordin, as the result of the foreclosure of his mortgage, undoubtedly acquired whatever property and property rights were covered by it.

The purpose of the covenant in suit is obvious. The flooring plant was entirely dependent upon the steam plant of the sawmill for power. If Nordin had to take over the flooring plant under foreclosure of his mortgage without having the right to obtain steam power from the sawmill, all he would obtain would be an inoperable plant unless he installed, at his own expense, a steam plant. The covenant was intended to avoid that eventuality.

The covenant should have described the sawmill tract as the source of the steam power to be furnished, so that the record of the mortgage would be constructive notice to any purchaser or lessee of that tract of the existence of the covenant and the rights of Nordin thereunder. However, if the covenant is one which, under Arkansas law, was valid and created an easement or equity which ran with the land, there would seem to be no valid reason why it should not be enforceable against any successor of the Star City Lumber Company who acquired title and possession of the sawmill and steam plant and who knew, or was charged with knowledge, of the right of Nordin to be furnished with steam power at cost from the steam plant of the sawmill while it continued to be an available source of such power.

The general rule in Arkansas appears to be that a covenant which is beneficial or essential to the use of the land conveyed and which is expressly made binding upon the heirs, assigns or successors of the grantor, runs with the land. This, we think, is indicated by Fort Smith Gas Co. v. Gean, 186 Ark. 573, 55 S.W.2d 63, 65–66. In that case, the decision of this Court in Murphy v. Kerr, 8 Cir., 5 F.2d 908, 41 A.L.R. 1359, was cited with apparent approval, although distinguished upon its facts. In Lawhon v. American Cyanamid & Chemical Co., 216 Ark. 23, 223 S.W.2d 806, 808, the Supreme Court of Arkansas said: " * * * If a covenant is of value to the covenantee by reason of his occupation of the land, ordinarily it is regarded as running with the land. Tiffany on Real Property (3rd Ed.), § 854. Our own cases have defined a covenant running with the land as one that benefits the land itself. St. Louis, I. M. & S. Ry. Co. v. O'Baugh, 49 Ark. 418, 5 S.W. 711; Bank of Hoxie v. Meriwether, 166 Ark. 39, 265 S.W. 642. The two views just stated are entirely harmonious, for a covenant that may be said to benefit the land itself is of value to the covenantee primarily because he is entitled to occupy the land and enjoy the benefit."

The case of Murphy v. Kerr, supra, 8 Cir., 5 F.2d 908, does not differ in principle from the instant case. In that case the owner of a tract of land, upon a part of which, referred to as tract B, was a dam across the Pecos River and a power plant with pipes and connection operated by the water power derived from the dam, used the power plant to pump water to a reservoir on another portion of her land, referred to as tract A, for irrigation and other purposes. The power plant was also used to furnish electricity to the residents of Carlsbad, N. M.. The owner sold tract A to Kerr under a deed containing a covenant which obligated the grantor, "her heirs, executors, administrators and assigns," to have water pumped, upon demand, from the Pecos River to the reservoir on the tract conveyed, for the benefit of the grantee, "her heirs, ex-

ecutors, administrators and assigns." Thereafter the grantor sold part of tract B with the power dam and appurtenances to a power company, for which a receiver named Murphy was later appointed. He brought suit to quiet title against Kerr's claim to the right, under the covenant in the deed to her, to have her land and reservoir supplied with water by the power company. This Court held that the covenant, although affirmative in character, ran with the land conveyed to her and created an easement and water right in tract B and the dam, power plant and appurtenances located on it, to have water pumped into the reservoir on tract A, as provided in the covenant. We said in that case page 910 of 5 F.2d: " * * * The customary method of creating such a covenant is clearly to express in the covenant which the grantor intends shall run with the land the grantor's agreement that this covenant shall bind his assigns, those to whom the title to the land he retains shall subsequently pass, as well as himself."

There is no reason to believe that the applicable law of Arkansas differs from the law which is generally applied to covenants such as that in suit. The general rule is stated in 14 Am.Jur., Covenants, Conditions and Restrictions, § 26, p. 502, as follows: "The test whether a covenant will or will not run with the land depends not so much whether it is to be performed on the land itself as whether it tends directly or necessarily to enhance its value or render it more beneficial or convenient to those by whom it is owned or occupied." See, also, 21 C.J.S., Covenants, § 62, p. 927, and the Annotation to Murphy v. Kerr, supra, 41 A.L.R. 1363.

The question whether the record of the Nordin mortgage containing the covenant in suit was constructive notice to May of the existence of the covenant was, we think, a doubtful question of local law as to which the views of the trial Judge should be accepted. See Buder v. Becker, 8 Cir., 185 F.2d 311, 315 and cases cited.

In his complaint Nordin alleged that May "has come into possession of the steam power plant which was used by the said Star City Lumber Company to furnish to the plaintiff steam power in accordance with the foregoing provisions [covenant] of plaintiff's mortgage"; and that "The defendant May had full knowledge of the provisions of the said mortgage and abided by them until August 23, 1950, * * *." May, in his answer, denied that he had knowledge of the provisions of the Nordin mortgage.

The issue of May's knowledge of the covenant in suit was, we think, a vital issue in the case. The record made in the trial court furnished no adequate basis for a determination of the issue. If May, at the time he leased the sawmill property, actually knew of the covenant, or was charged with knowledge of it, he would, we think, be bound by it. If the steam connection between the sawmill and the flooring and dry kiln plant was visible and if the sawmill steam plant was so obviously the source of power of the flooring plant as to put a man of ordinary prudence and intelligence upon inquiry as to what rights or arrangements the owner of the flooring plant had for obtaining steam power, May would, we think, be charged with knowledge of what inquiry would have disclosed, namely, that Nordin was, by virtue of the covenant of his mortgage, entitled to be furnished steam power from the steam plant of the sawmill at cost. See and compare, Larsen v. Peterson, 53 N.J.Eq. 88, 30 A. 1094, 1096–1097; Southwest Pipe Line Co. v. Empire Natural Gas Co., 8 Cir., 33 F.2d 248, 253–259 and cases cited, 64 A.L.R. 1229. In Holloway v. Eagle, 135 Ark. 206, 205 S.W. 113, 116, the court said: "They all lived in the community, and were cognizant of the facts, or had notice of facts and circumstances, that would put a man of ordinary prudence and intelligence on inquiry, which, in law, is tantamount to knowledge of the facts to which such inquiry might lead." See, also, Campbell v. Southwestern Telephone & Telegraph Co., 108 Ark. 569, 158 S.W. 1085.

416

We think the temporary arrangement between Nordin and May for an exchange of kiln space for steam power did not deprive Nordin of his rights under the covenant or amount to an abandonment by him of such rights. Compare, Fulcher v. Dierks Lumber & Coal Co., 164 Ark. 261, 261 S.W. 645, 649. The arrangement, aside from being temporary, was consistent with the theory that, while it lasted, the use of kiln space furnished by Nordin was regarded as the equivalent of the actual cost of the steam power furnished by May.

There is, we think, no merit in the contention that to grant the relief prayed for by Nordin would interfere with the jurisdiction or custody of the State court in the proceedings for the foreclosure of the Alsobrook mortgage upon which May's rights are based. The receiver appointed by that court is not a party to this action and no relief was asked which could impair his rights. See and compare, Murphy v. Kerr, supra, page 911 of 5 F.2d.

There is in May's answer an allegation that "the mortgage under which his said lease agreement was predicated, was executed * * * prior to February 19, 1947, the date of plaintiff's alleged mortgage * * *." Nowhere in the record do we find anything to prove or disprove that allegation except an affidavit of May in which the statement is repeated. Conceivably, that issue may be of importance. The court says nothing about it in the memorandum opinion. The question is not referred to in the briefs of counsel. We have assumed that the covenant was not, because of time or circumstance, inferior to the mortgage upon which May's rights are based. If we are mistaken about that, the facts in that regard will be developed upon the trial of the case for whatever significance they may have.

We are not deciding, and cannot decide, any controverted issues of fact. We hold that the covenant in suit ran with the flooring plant property and was binding upon a successor or assign of the Star City Lumber Company who, subsequent to the execution of the covenant, acquired title or possession of the sawmill property and who knew or was charged with knowledge of the covenant.

Our conclusion is that the District Court should not have attempted to dispose of this case on a motion for summary judgment; that the court erred in entering the judgment appealed from; and that, upon remand, the case should be tried upon the merits in conformity with this opinion.

The judgment appealed from is reversed and the case is remanded for trial upon the merits.