Evans *v.* American Cyanamid & Chemical Corporation.

4-7856                                          193 S. W. 2d 1003

Opinion delivered April 8, 1946.

Rehearing denied April 13, 1946.

*Ernest Briner* and *Armistead, Rector & Armistead,* for appellant.

*Howard Cockrill* and *Ashley Cockrill,* for appellee.

GRIFFIN SMITH, Chief Justice. The questions are twofold: (a) Was a mineral lease of 1936 surrendered by direct action of the grantee, or (b) if the purpose was otherwise and the grantor's agent was mistaken regarding the transaction relied upon as a voluntary discharge, had the grantee's conduct amounted to an abandonment?

H. R. Bizzell had for many years owned approximately 160 acres in Saline County. In 1936 The Arkansas

Bauxite Corporation sought certain mineral rights. Bizzell's aunt, Mrs. Louetta Horn, owned twelve and a half acres lying immediately south of an equal area belonging to Bizzell. Mrs. Horn authorized Bizzell to deal with her land while he was looking. after his own holdings.

Fred J. Venner was Bauxite Corporation's manager —an enterprise in which he had considerable financial interest. In November, 1936, Venner leased the twenty-five acres in question, procuring rights to the north twelve and a half acres from Bizzell, and to the south portion from Mrs. Horn.

In 1940 Bauxite Corporation sold its properties to American Cyanamid & Chemical Corporation. It subsequently developed that Venner, in taking the Horn-Bizzell leases, acted as trustee and that his rights inured to the Corporation.

April 12, 1938, Bizzell purchased the twelve and a half acres from his aunt. In November, 1942, Bizzell sold to H. W. Anderson all of his acreage, including the tract acquired of Mrs. Horn. January 8, 1943, Anderson sold to S. E. Evans, the appellant here.

Cyanamid does not claim any interest in the original Bizzell property. The Horn lease was not expressly mentioned in the contract whereby Cyanamid acquired properties of its predecessor. However, the document was found in the fall of 1940, and in January following Cyanamid procured from Venner an assignment of the lease, and it was recorded in October, 1941.

The parties have stipulated that in 1938 when Bizzell acquired title to the Horn tract, ". . . he had actual knowledge of the outstanding [Venner] lease."

It is appellee's contention that appellant (doing business as S. E. Evans Construction Company) ignored the recorded lease and began taking minerals from the Horn tract after warning by correspondence and otherwise had been given. On the other hand appellant insists that Venner, as early as April, 1938, had completed oper-

ations on the Bizzell-Horn twenty-five acres, and that Venner returned Bizzell's lease (which had not been recorded) and gave letters stating that each lease was turned back to the original owner. Carbon copy of a letter identified as having been written by Venner April 12, 1938, and addressed to Bizzell, was introduced, but the original was not found. Venner testified that his "best" recollection was that he gave letters releasing each of the tracts, and that he was anxious to get rid of the property because it was in a dangerous condition by reason of mining operations and he feared injuries might occur, with resulting litigation.

Bizzell did not agree with Venner that two letters were written. There was but one, and it related to the Horn lease.

Leroy J. Harrington was superintendent for Venner's Company in 1938 and heard the conversations, in part, between Bizzell and Venner, although he was not in the same room.

It is indicated that Cyanamid's attention to existence of the Horn lease was not activated until one of its agents, in looking through Bauxite Corporation's old files, discovered it, and the new management concluded it was valuable and procured an assignment and caused the document to be recorded. Appellant claims there was notice, in that Bizzell, financially assisted by Venner, had fenced or partially fenced the twenty-five acres. Bizzell testified that water to an appreciable extent had accumulated in one of the pits and that he (Bizzell) used this as a fishing pond; also that his cattle ranged on the south half of the twenty-five acres, and that in April, 1938, Venner and those whom he represented moved machinery from the lease and said they were through with it because the high-grade ore had been exhausted. Bizzell lived "within sight" of the property, and claims to have been familiar with all of the material operations.

By its terms the lease executed by Mrs. Horn was to run for a term of fifty years. A cash payment of $500

is recited. Section 3 obligates the lessee to pay royalties of thirty cents "per gross ton (2,240 lbs.) of green baux-ite ore containing for each quarterly period (of three months each) a minimum average alumina content of fifty-five percent and containing a maximum silica content of not exceeding four percent."

The lessee obligates himself to supply the lessor with audit records or such information as may be reasonably required regarding the quantity of ore mined and removed, payment to be on the tenth of each month "for all ore transported from the mine or mines on said land during the preceding calendar month." There is a provision limiting the lessee's liability for taxes "to the payment of severance taxes" incurred by reason of the removal of minerals. The lessee's rights were to mine, dry, and calcine bauxite ore "  .  .  . and for the purpose of manufacturing any products thereof and selling the same, and for the purpose of mining and selling all other ores, clays and minerals of whatsoever class and kind which may be found on or in the [lands described]."

In addition to Harrington's testimony, R. H. Harris of Bauxite Corporation's operating force, was called as a witness on behalf of the plaintiff. He talked with Harrington at the time Bizzell contends the two leases were released; but, like Harrington, his version differs from Venner's testimony. Effect of what these two witnesses say is that they agreed regarding worthlessness of the north twelve and a half acres, but each thought (and seemingly so informed Venner) that there was still "good ore" on the Horn tract—that is, "good ore" in the sense of classification at that time. There is also testimony that Venner and his group had leased the so-called Townsend tract. Mrs. Townsend and Bizzell are cousins. Bizzell assisted Venner in procuring the Townsend lease and was familiar with its topography, etc. Harrington testified that the physical or mechanical plan or operation called for work on the Townsend property, and, inferentially, that the purpose was to come back to the Horn deposits.

Whatever the plans may have been in April, 1938, it is quite clear that friendly relationships existed between Venner and Bizzell, and it is equally clear that in respect of the lease now questioned Bizzell acted for Mrs. Horn, with her complete approval.

We think the Chancellor was sustained by a preponderance of the evidence in holding that the Horn lease was not surrendered by consent of Venner when Venner released the Bizzell tract. More than five years elapsed between the time the transactions (whatever they may have been) occurred in Venner's office and the time he testified. Venner thought two letters had been written—each releasing a separate tract—and Bizzell was positive there was but one letter and that Venner returned to him one unrecorded lease. Why—if Venner knew the Horn lease had been cancelled by the process he described—did he assign this same lease to Cyanamid, coupled with a warranty that he was the owner ''. . . · [with] all the leasehold rights which said lease purports to create; . . . that said lease is now unencumbered, valid, and in full force and effect in accordance with its terms''?

The answer must be that, as appellee points out, Venner forgot the details of what occurred in his office in 1938. He remembered Bizzell because many of his transactions were with the resident who was familiar with properties. It is not difficult to understand why, after Bauxite Corporation had sold its properties, Venner would think he had written a letter that could not be produced, and regarding which a carbon copy was not in the file where it naturally would have been placed if such a letter had been written; nor could any such copy be found. Appellee expressly asserts that it does not question Venner's veracity, but only his recollection.

The same reasoning which prompted the Chancellor to find that the Horn lease had not been surrendered, nor a letter of cancellation given, and that the purpose to do so did not exist,—this same reasoning justified the Court in finding that the lease was not abandoned. Bizzell, being Mrs. Horn's agent, knew that the lease was

not surrendered if in fact it were not; hence he will be presumed to have acquiesced in retention of the rights and deferment of operations to a later date.

Section 7 of Mrs. Horn's lease provides: ''In any case where the lessor hereafter claims a default on the part of the lessee in any of the premises, covenants, payments or other matters to be performed on the part of the lessee under the provisions hereof, or in the event of a change of ownership, the lessor does hereby bind [herself] to give immediate notice of any such default or change of ownership in writing to the lessee and addressed to the lessee at Bauxite, Arkansas, such notice to be mailed by registered mail with return receipt requested . . .''

It is not contended that such notice was given—that is, notice that the lessor's interests were being sacrificed through failure of Venner to take the ore. Appellant's answer naturally is that notice was not necessary, since there was surrender. But the finding is otherwise, and it must therefore be presumed that Bizzell acquiesced in the delay.

Inequity of the contract is argued in that at the time it was executed Venner and his associates were prospecting for a grade of ore which then had a value for abrasive purposes as distinguished from alumina and aluminum developments made possible by war's necessities. It is shown that large quantities of low-grade ore were taken as to which royalties were not payable. But the parties made their contract. *Prima facie* Mrs. Horn received $500 cash with expectation of royalties of thirty cents per long ton for ore of the grade specified. The circumstance of worldwide demand for aluminum years after the lease was made and the fact that inferior ore became valuable, are matters we cannot correct by changing the contract; hence the decree must be affirmed.

Mr. Justice McFADDIN concurs in the result, but arrives at his conclusions by a process of reasoning different from that expressed in the opinion.

HOLT, ROBINS and MILLWEE, JJ., dissent from refusal to modify on motion of rehearing.