FOSTER *v.* CRABTREE.

5-38                          256 S. W. 2d 722

Opinion delivered April 13, 1953.

*O. D. Longstreth, Jr., Dave E. Witt* and *Joseph Brooks,* for appellant.

*Rose, Holland, Holland & Smith,* for appellee.

ED. F. McFADDIN, Justice. Appellants (plaintiffs below) sought to cancel a stone quarry lease which they had executed to appellee, Crabtree (defendant below). The lease, dated May 8, 1951, provided, *inter alia,* that Crabtree: (a) would develop the quarry without subleasing it; (b) would pay royalty of 20c per ton on all "normal" stone sold, and 10c per ton on all waste stone; (c) would furnish Foster copies of all weight tickets; (d) would pay royalty semi-monthly; and (e) would agree to cancellation of lease if he did not fulfill the said agreements.

On January 11, 1952, this suit was filed, in which the plaintiffs claimed that the defendant had breached the lease in these particulars: (a) violation of the provision against subletting; (b) failure to weigh the stone removed; and (c) failure to properly account for, and pay royalty on stone removed. Upon issues joined, the Chancery Court heard the evidence, and found that the plaintiffs had failed to establish any breaches of the lease. From a decree for defendant, there is this appeal, urging the points now to be discussed.

I. *The Claim That Crabtree Breached the Provision Against Subletting.* In the Trial Court, the burden was on the appellants, as plaintiffs, to prove any claimed breach. See *Williams* v. *Shaver,* 100 Ark. 565, 140 S. W.

740; and see also 9 Am. Jur. 400. In this Court, the burden is on the appellants to establish that the Trial Court's finding is contrary to the preponderance of the evidence. *Wheeler* v. *Wendleton,* 209 Ark. 601, 191 S. W. 2d 952.

As regards subletting, the appellants have failed to discharge either of these burdens. The only proof even tending to show a subletting was that some parties obtained stone from the quarry through a contract with Crabtree, whereby such parties furnished their own equipment and men. But even so, it was the Crabtree quarry, and appellee continued in active charge of it. In short, no subletting was established.

II. *The Claim That Crabtree Breached the Provisions Relating to Weighing, Accounting, and Paying for Stone Removed.* The bulk of the testimony was offered on this point, and it would unduly prolong the opinion to detail all such evidence. There was a positive showing that the weighing provision was complied with. Crabtree offered day-by-day records of each removal of stone from the beginning of operations on May 25, 1951, to February 20, 1952, which was shortly before the trial. These records showed the weight and destination of all stone removed. A total of these weights was 1,543½ tons, which, at 20c per ton (the royalty price stated in the contract) is $308.70.

Then, as regards accounting and paying, Crabtree proved by Foster's signed receipts [1] that Crabtree had paid Foster a total of $348.90 during the same period of time. This included $20 for waste rock and an overpayment of approximately $20 which came about because of fractional tonnage weights existing at various royalty paying periods. When Crabtree offered these records and the said receipts, establishing the foregoing facts, the appellants failed to disprove the correctness of such accounting; and the Trial Court properly refused to cancel the lease on the grounds claimed by appellants.

III. *The Claim That the Lease Was Void.* This point is argued in this Court because of testimony that

[1] There was one receipt for $5.50 not signed by Foster; but his failure to sign it was explained.

appellant, R. Z. Foster, was suffering from senility. No allegation in the complaint referred to such senility; but —assuming without deciding that we should in a case like this one treat the complaint as amended to conform to the proof—nevertheless, the evidence is entirely too meager to support appellants' present contentions. The doctor, who testified, admitted that Mr. Foster's mental condition might change from time to time. The attorney who drew the lease, and was paid by both parties, frankly testified that Mr. Foster fully, intelligently, and completely discussed all the terms of the lease before it was signed.

The decree is in all things affirmed.

