Josephine McMILLAN, Plaintiff,

v.

MALVERN GRAVEL COMPANY, a Corporation, and Malvern and Ouachita River Railroad Company, Defendants.

Civ. A. No. 629.

United States District Court
W. D. Arkansas, Hot Springs Division.

Dec. 20, 1955.

**568**

Cole & Epperson, Malvern, Ark., Hardin, Barton, Hardin & Garner, Fort Smith, Ark., for plaintiff.

Joe W. McCoy, Malvern, Ark., Mehaffy, Smith & Williams, Little Rock, Ark., for defendants.

JOHN E. MILLER, District Judge.

This case was tried to the Court, without a jury, on November 16, 1955, and at the conclusion of the trial the Court took the case under advisement pending receipt of briefs from the parties. The briefs have been received and the case is now ready for final disposition, and the Court, having considered the pleadings, ore tenus testimony of the witnesses, exhibits, stipulations, interrogatories and answers thereto, and briefs of the parties, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

### Findings of Fact

1.

The plaintiff, Josephine McMillan, is a citizen and resident of Hot Spring County, Arkansas.

The defendant, Malvern Gravel Company, is a corporation organized under the laws of the State of Delaware and is authorized to do business in Arkansas. It is engaged in the processing and sale of sand and gravel within the State of Arkansas, with its principal office at Malvern, Hot Spring County, Arkansas.

The value of the rights and things in controversy and to be adjudicated in this action exceeds the sum of $3,000, exclusive of interest and costs.

2.

On January 10, 1919, the heirs of the estate of J. W. Keith, deceased, executed a lease to J. J. Ball leasing: "all the gravel bar within certain lands lying and being situated in Hot Spring County, and State of Arkansas, to-wit:

"North West quarter of the South West quarter of Section Sixteen (16), East and West of the Ouachita River, and all gravel in Section Seventeen (17), Township Four (4) South, Range Seventeen (17) West, lying East and West of the Ouachita River.

"Party of the second part is to construct a Railroad track to said gravel bed on or before December 31st, 1919, but the second party is not to excavate closer than fifty feet to high bank on the South side of gravel bar East of the River in

"The South East quarter of the South East quarter of Section Seventeen (17).
and not to excavate closer than two hundred feet of the South line of the

"South West quarter of the South East quarter of Section Seventeen (17)."

Apparently J. J. Ball made no attempt to take gravel from the property covered by the lease, and on June 29, 1928, the lessors canceled the lease since no payments had been made or tendered to them by J. J. Ball.

3.

On December 23, 1926, George C. Miller purchased by warranty deed the hereinafter described lands from James F. Hall and Amanda Hall, the deed being recorded in Hot Spring County Deed Record Book 47 at page 104 thereof:

"The West Half (W½) of the Northeast Quarter (NE¼) of the Southwest Quarter (SW¼) of Section Sixteen (16) Township Four (4) South, Range Seventeen (17) West, containing twenty (20) acres, more or less."

4.

George C. Miller died intestate on February 13, 1928, seized of said lands and left surviving him his wife, Mattie Miller, and the following named heirs at Law: Harry B. Miller, John E. Miller, and Archie Harrison, children by his first wife; and Edna M. Jordan, James'

M. Miller, Jewell M. McHenry, Jennie M. Williams, Kathleen M. Stinson, George C. Miller, Jr., and Robert P. Miller, children by his second wife, being the said Mattie Miller.

### 5.

Thereafter and on the 22nd day of March, 1928, Harry B. Miller and Lillie E. Miller, his wife, John E. Miller and Wordie L. Miller, his wife, and Archie M. Harrison and husband, B. E. Harrison, conveyed all of their rights, title and interest in and to the said lands to Mattie Miller by warranty deed which is recorded in Hot Spring County Deed Record Book 48 at page 595 thereof.

### 6.

On April 8, 1929, Mrs. Jennie S. Keith, widow of J. W. Keith, and several other Keith heirs executed a "Sand and Gravel and Right of Way Lease" to H. F. Riley, J. J. Ball, and Frank McGillicuddy. The lease was for a period of 20 years and covered the following lands:

"All lands owned by the lessors, containing gravel, in Sections Sixteen (16), Seventeen (17), and Twenty-One (21), in Township Four (4) South, Range Seventeen (17) West."

The lease provided that the lessees should, inter alia, establish a gravel washing plant, and in this connection the lease provided as follows:

"It is agreed that the establishing of a gravel washing plant upon the West Half of the Northeast Quarter of the Southwest Quarter (W½ NE¼ SW¼) of said Section Sixteen (16), being land sold to George Miller, shall be deemed a sufficient compliance with the agreement to build and maintain a washing plant upon the leased land * * *."

The lease further provided:

"The lessees are granted the right, during the existence of this lease, to mine, excavate and remove all gravel, both river gravel and hill gravel, which may be located upon same. This is to include all river gravel which may accumulate on said leased lands during the period of this lease."

### 7.

On the 25th day of May, 1929, an instrument which the defendant contends is a real estate lease covering the above described lands was executed by Mattie Miller in her own right and as guardian of George C. Miller, Jr. (George Miller) and Robert P. Miller (Patrick Miller), and by Edna Jordan, Jim Miller, Jewell McHenry, Jennie Williams and Kathleen Stinson, to Frank McGillicuddy, Trustee, lessee, his heirs and assigns. This instrument was recorded on the 16th day of July, 1929, in Hot Spring County Record Book 51 at page 515 thereof, and reads as follows:

#### "Real Estate Lease

"This Lease, made and entered into this the 25th day of May 1929, by and between Mattie Miller in her own right and Guardian of George Miller and Patrick Miller, Edna Jordan, Jim Miller, Jewell McHenry, Jennie Williams, Cathline Stinson, Parties of the first part, and Frank McGillicuddy, Trustee, his heirs and assigns, party of the second part. Witnesseth:

"That for and in consideration of the sum of $150.00 Dollars payable yearly in advance party of the first part does hereby lease, let and by these presents deliver possession to the said Frank McGillicuddy, Trustee, his heirs and assigns for the term of ten years the following described lands lying in the County of Hot Spring and State of Arkansas, to-wit:

"The West Half of the Northeast Quarter of the Southwest Quarter of Section 16 Twp. 4 S, R. 17 West. and the said Frank McGillicuddy, Trustee, his heirs and assigns shall have the right to build railroad tracks upon said lands in the operation of a gravel washing plant, and at the expiration of this Lease shall have the right to remove from said lands all railroads and equipment of

whatsoever kind that may be placed on said lands.

"It is further agreed by and between the parties of the first part, and the party of the second part that should the party of the second part desire to do so he shall have the right to extend this lease from year to year beyond the term of ten years, until the said Frank McGillicuddy his heirs and assigns shall remove all gravel and sand out of the gravel pit known as the Keith pit, by the payment of the sum of $150.-00 Dollars per year as herein provided.

"That the party of the second part shall have the right to terminate this lease at any time after the expiration of five years by giving the parties of the first part thirty days notice in writing.

"It is further agreed by and between the parties of the first part and the party of the second part, that should the party of the second part sell or remove any gravel or sand from the above described premises, the party of the second part shall pay once each month to the Bank of Malvern, Malvern, Arkansas, to be paid out by said Bank to the parties of the first part as their interest may appear Five Cents per cubic yard 3000 lbs. to the cubic yards, for each cubic yard of gravel or sand removed from said lands.

"To which Lease and Agreement we and each of us have hereunto set our hands and seal this the 25 day of May 1929.

"Mrs. Mattie Miller
"Edna Jordan
"Jim Miller
"Jewell McHenry
"Jennie Williams
"Kathleen Stinson

"State of Arkansas,
"County of Hot Spring.

"Be It Remembered, That on this day came before me, the undersigned a Notary Public, within and for the County aforesaid, duly commissioned and acting Mattie Miller to me well known as the grantor in the foregoing Lease, and stated that they had executed the same for the consideration and purposes therein mentioned and set forth.

"Witness my hand and seal as such Notary Public on this 25th day of May 1929.

(Seal)          "Andrew I. Roland,
                    "Notary Public.

"My Com. Expires: Jan. 19, 1930.

"Filed for record on this 16th day of July A.D. 1929 at 1: o'clock P.M. and duly recorded on the same date.

    "/s/ Jack Kight
"Circuit Clerk & Recorder

"Marginal Note: This Lease examined approved in all things this July 8th, 1929.

        "F. D. Goza, County &
          Probate Judge."

8.

Subsequent to the execution of the lease, Frank McGillicuddy assigned all of his right, title and interest in and to said instrument to the defendant, Malvern Gravel Company, for whom he was Trustee in the execution of the lease. There is no record in the Circuit Clerk's Office of said assignment.

9.

At the time of the execution of the lease, George C. Miller, Jr. (referred to in the lease as George Miller) was 19 years of age, and Robert P. Miller (referred to in the lease as Patrick Miller) was 16 years of age.

On July 8, 1929, Mattie Miller was appointed guardian for George Miller and Patrick Miller, and on said date her letters of guardianship and guardian's bond were approved by the Probate Judge. Subsequently, on July 10, 1933, the then Probate Judge entered the following nunc pro tunc order:

"It appearing to the Court that on the 25th day of May, 1929, Mrs. Mattie Miller et al entered into a certain lease contract with Frank

McGillicuddy; which lease is recorded in Record Book No. 51 at page 515, which lease was approved by the Probate on the 8th day of July, 1929. But said approval of the Probate not having been entered of Record it is entered now for then."

10.

Mattie Miller died at "The Old Miller Place" on Dyer Street in the City of Malvern, Hot Spring County, Arkansas, on the 3d day of May, 1943. She died intestate and no personal representative was ever appointed and no administration was ever had on her estate in Hot Spring County, Arkansas. Her sole heirs at law were the following: Edna M. Jordan, James M. Miller, Jewell M. McHenry, Jennie M. Williams, Kathleen M. Stinson, George C. Miller, Jr., and Robert P. Miller.

11.

In their testimony the parties referred to the first lease as being the "Ball" lease, the second lease as being the "Keith" lease, and the lease involved herein as being the "Miller" lease, and for purposes of brevity the Court will use the same terminology.

When the Ball lease was executed in 1919 no extensive gravel operations had been conducted on the property, although a small amount of gravel had been removed by wagon from a particular location which the witnesses referred to as the "Keith Bar" or "Ball's Bar". The Ball lease attempted to restrict the lessee's operations to an area adjacent to the said Keith bar. See, Keith v. Keith, 183 Ark. 1017, 39 S.W.2d 706. As heretofore stated in Finding of Fact No. 2, apparently no action was taken under the Ball lease. In the meantime some changes had occurred in the land covered by the Ball lease, evidently caused by flood, and it appeared that gravel was on other portions of the Keith lands as well as on the particular portion referred to as the Keith Bar or Ball's Bar.

Thus, at the time the Keith lease was executed the parties knew that gravel was located on all three of the sections covered by said lease, and it was contemplated that the lessees would take gravel from all three of said sections.

At the time the Miller lease was executed, which was a little more than a month after the execution of the Keith lease, apparently the parties to the Miller lease had knowledge of the Keith lease, since the Miller lease provided that the lessee could extend the lease from year to year until he had removed all gravel and sand out of the gravel pit known as the "Keith pit".

In any event, the subsequent actions of the parties to the Miller lease indicate that they were construing said lease in connection with the Keith lease, and that the term "Keith pit" meant the Keith lands covered by the Keith lease.

In 1929 the defendant, Malvern Gravel Company, built its washing plant, and gravel operations were commenced in the latter part of 1929 or the early part of 1930. Certain buildings and railroad tracks were constructed on the Miller property, as well as on adjoining property, and at the present time there are approximately eight buildings on the Miller land. Apparently the only building on said land that is relatively new is a semiportable building which houses the Diesel unit.

Since 1930, defendant has taken gravel and sand from the Keith lands in varying amounts and has made payments to the Keith heirs and their assigns in accordance with the terms of the Keith lease, said lease having been extended on January 13, 1949, for a period of ten years ending April 8, 1959. At the time of the trial the Keith heirs had been paid a total of $132,103.73. During the period from 1948 to 1955, the payments varied from a high of $12,668.04 in 1951 to a low of $9.36 in 1948. These payments included royalties paid to W. J. Keith and Dale Haltom on separate leases on property included in the original Keith lands.

At all times after the execution of the Miller lease and until the property was conveyed to plaintiff, the Miller heirs, including the two minors, acquiesced in

the manner in which defendant conducted its operations upon the Miller land, the Keith land, as well as other lands. None of the original lessors questioned the right of defendant to extend the Miller lease from year to year while defendant was removing gravel from various portions of the Keith lands.

### 12.

Plaintiff's husband handles most of his business in plaintiff's name, and on November 18, 1954, the Miller land, which is covered by the Miller lease, was purchased in the name of plaintiff by warranty deed from Edna M. Jordan, James M. Miller, Jennie M. Williams, Kathleen M. Stinson, George C. Miller, Jr., and Robert P. Miller, and the said warranty deed was filed for record on the 9th day of December, 1954, and is recorded in the Deed Records of Hot Spring County, Arkansas.

At the time of purchasing the Miller property plaintiff's husband had full knowledge of defendant's lease.

### 13.

From the date of the execution of the Miller lease, the annual payment of $150, as provided in the lease, was paid by Frank McGillicuddy or his assigns to either Mattie Miller or Edna M. Jordan up to the year 1954. On May 19, 1954, defendant executed a check in the sum of $150 payable to Mrs. W. R. Jordan, Administratrix, Mattie Miller Estate. Mrs. Jordan did not accept and cash this check, but on December 10, 1954, wrote defendant as follows:

"Dear Sirs:

"Kindly mail check to me, in amount $75.00, to cover rent on 6 months use of the property of the Mattie Miller estate."

On December 16, 1954, defendant wrote Mrs. Jordan as follows:

"Dear Mrs. Jordan:

"Enclosed please find our check #15454 in the amount of $75.00 for payment of six months rental for use of the Mattie Miller property as per your request dated December 10, 1954. This is based on our annual rental rate of $150.00 as per our lease.

"We understand from your recent telephone conversation that the Estate has sold this property and will you be so kind as to advise us to whom you sold it and to where we are to send the remainder of the $150.00 rental money.

"Thanking you for your usual prompt attention and with our best personal regards, we remain,

"Yours very truly,
"Malvern Gravel Company
"/s/ Sam R. Clark
"Sam R. Clark, Gen. Mgr."

On December 18, 1954, Mrs. Jordan wrote defendant as follows:

"Dear Sirs:

"Thank you for payment of $75.-00 six months rental for use of the Mattie Miller property from May 25 to November 25, 1954. As I have told your Mr. Bill Riley, in a telephone conversation recently, the Estate has sold this property to Mr. Faye McMillan of Malvern, Arkansas."

On the 10th day of January, 1955, plaintiff wrote the defendant a registered letter, the body of which is as follows:

"As you know, your lease with the Millers', on the hereinafter described property, was never renewed, and I have no intention of renewing this lease under the terms and conditions of that lease.

"The subject property being described as follows:

The West Half of the Northeast Quarter of the Southwest Quarter of Section 16, Twp. 4 S, R. 17 West.

"I know that you know that I have purchased the property, and I have received no communications from you as to whether or not you desire to lease this property from me. Your lease terminated in May, 1954, and unless a new lease is made, I want possession of this property

immediately. As your company has no lease on this property, all activity on this property by your agents, servants and employees is done as trespassers upon my property, and therefore, you are hereby notified that I want this property vacated within 10 days."

In response to this letter, on January 14, 1955, defendant wrote plaintiff as follows:

"Dear Mrs. McMillan:

"This acknowledges your letter of January 10th which is the first knowledge we have had of your ownership of this property.

"You are mistaken in stating that our lease with the Millers covering the West Half of the NE¼ of the SW¼ of Section 16, Township 4 South, Range 17 West, was not renewed. It was in fact timely extended by our forwarding check for $150.00 on May 18, 1954. This covered the rental to May 25, 1955. Mrs. Jordan subsequently returned the check and accepted one for $75.00, leaving $75.00 due you for the balance of the rental period until May 25, 1955, if you are in fact the owner of the property. Based on your statement of January 10, 1955, that you are the owner of the property and Mrs. Jordan's refusal to accept the full amount tendered at the proper time and later accepting' only $75.00, we are enclosing herewith our check No. 15558 in the amount of $75.00, to cover balance of rental to May 25, 1955.

"If there is any doubt in your mind that the lease was properly extended by full, prompt and timely compliance on our part, we suggest that the slightest investigation on your part will convince you that we have fully complied and the lease is in force.

"Yours very truly,
"Malvern Gravel Company
"/s/ Sam R. Clark
"Sam R. Clark, Vice-Pres."

Plaintiff refused to accept the $75 check and returned the same to defendant.

On May 11, 1955, a check made out in the sum of $150, payable to the plaintiff, was sent to the plaintiff by the defendant, Malvern Gravel Company, by registered mail. The check was attached to a letter which stated as follows:

"Enclosed please find our check in the amount of $150.00 exercising our option granted under the Miller Estate Lease to extend same for one year."

On the 20th day of May, 1955, said check was returned to the defendant, Malvern Gravel Company, by the plaintiff by registered mail, return receipt requested. This check was an attempted payment of the rental for the period May 1955 to May 1956, but by reason of a bookkeeping error the notation on the face of the check read "May—1954 thru May—1955". This notation was merely for bookkeeping purposes, and the letter accompanying the check clearly discloses that it was tendered in payment of an extension of the lease for one year, i. e., May 1955 to May 1956.

14.

Since the execution of the Miller lease in 1929, gravel operations had been conducted and gravel removed from the original Keith bar at least twice. The evidence was not clear on this point, but apparently, after gravel had been removed the first time, flood water had refilled the excavated portion with gravel.

There is still a substantial quantity of commercial gravel on the Keith lands and defendant is continuing to remove portions of said gravel. However, during the last year or eighteen months defendant has obtained 80 to 90 percent of its gravel from other lands. In fact, for a period of approximately two years defendant obtained a substantial amount of its gravel from property located two miles down the river, although at the same time defendant was removing gravel from the Keith lands. The reason for taking gravel from two or more locations

is that the gravel varies in quality and type, and defendant removes the gravel in accordance with the market conditions. That is, the type of gravel defendant will remove at a particular time depends upon its marketability.

### 15.

Defendant has removed no gravel from the Miller land covered in the lease.

### 16.

In general, property values in the area of the Miller property have increased during the last 25 years, but the amount of the increase was not clearly established by the evidence.

### 17.

The defendant, Malvern and Ouachita River Railroad Company has no interest whatsoever in the lease in question.

### Discussion

The five principal grounds upon which plaintiff relies to support her contention that the Miller lease is void are (1) that the lease was void because of irregularities in its execution; (2) that it was void as violating the rule against perpetuities; (3) that it is void because intervening conditions have made it inequitable and unconscionable; (4) that its extension privilege is not a covenant that runs with the land and therefore is not binding on plaintiff; and (5) that the lease is void or has been abandoned by reason of the failure of defendant to remove gravel from the "Keith pit", which plaintiff contends is limited to the original "Keith Bar".

It may be noted at the outset that the burden of proof is on plaintiff to establish the invalidity of the lease. See, Foster v. Crabtree, 221 Ark. 952, 256 S.W.2d 722. It may also be noted that while the law recognizes a distinction between an "extension" and a "renewal" of a lease, Montgomery Ward & Co. v. Metzger, 216 Ark. 88, 224 S.W.2d 368, the distinction is not material in the instant case. (The provision involved here is an "extension" covenant.)

### Is the Lease Void Ab Initio?

Plaintiff contends that the lease was void ab initio since the statutory provisions governing the leasing of land owned by a minor were not followed in the execution of the Miller lease.

It is true that the failure of the parties to comply with the statutes governing the lease of a ward's land renders the lease void or voidable. Gaines v. Gaines, 116 Ark. 508, 173 S.W. 410. It is likewise true, however, that upon reaching his majority the ward may ratify such a void lease. See, Robertson v. Cooper, 154 Ark. 5, 241 S.W. 50; Davie v. Davie, 154 Ark. 633, 18 S.W. 935. Moreover, the right of a minor to avoid a lease entered into by him is personal to the minor, and other parties cannot take advantage of the incapacity of a minor to, enter into a lease. Crutcher v. Barnes, 207 Ark. 768, 182 S.W.2d 867.

In the instant case the two minors involved reached their majority within a few years after the execution of the lease. Since that time they have accepted the rental payments and have made no attempt to disaffirm the lease. Unquestionably their action has amounted to a ratification of the lease and has cured any defects that might have existed in the execution of the lease. The same thing is true of any other technical defects in the execution of the lease, and therefore the lease is not void ab initio.

### Does the Lease Violate the Rule Against Perpetuities?

The Miller lease is not perpetual, and even if it were it would not violate the rule against perpetuities. Although covenants for continued extensions or renewals of a lease are not favored because they tend to create a perpetuity, such covenants, if express, are valid. Nakdimen v. Atkinson Improvement Co., 149 Ark. 448, 233 S.W. 694. The reason for the rule, while not expressly stated in the Nakdimen case, is that at any time the lessee can join with the owner of the

land and convey a fee title. See, Annotation, 162 A.L.R. 1147–1149.

■ Nor is the lease void for indefiniteness. See, Beeson v. La Vasque, 144 Ark. 522, 223 S.W. 355 (sustaining a lease extending "'during the time, not less than one year, during which the said V. A. Beeson may be in the military service of the United States'"); Graham v. Jonesboro, Lake City & Eastern R. Co., 111 Ark. 598, 164 S.W. 729 (sustaining a contract to maintain a railroad track as long as a gin was operated in a particular location); Annotation, 31 A.L.R. 2d 607, 621 (citing Van Beuren & New York Bill Post. Co. v. Kenney, 60 Misc. 338, 113 N.Y.S. 450 as sustaining a lease for one year, with right of renewal "'thereafter from year to year, so long as the said premises, shall be used for advertising purposes'"). Compare, Mooney v. Gantt, 219 Ark. 485, 243 S.W. 2d 9, 10 (sustaining a sand and gravel lease containing the provision that "'This contract is to remain in full force and effect so long as the party of the second part continues to mine and remove sand and gravel from any pit or pits that are or may be located upon the above described lands'"); Annotation, 172 A.L.R. 421.

### Have Changed Conditions Rendered the Lease Unconscionable and Thus Void?

■ It is very doubtful that the conditions have changed to such an extent as to render the lease inequitable, but even if it be conceded that the lease has become inequitable, nevertheless the lease was executed freely by the parties and is binding upon them and their successors. Evans v. American Cyanamid & Chemical Corp., 209 Ark. 1024, 193 S.W. 2d 1003.

### Does the Extension Covenant Run With the Land?

■ Plaintiff contends that the extension provision in the Miller lease is a personal covenant and not one running with the land, and therefore that said provision is not binding upon her. This contention cannot be sustained. Under the Arkansas law a covenant to renew or extend a lease is one which runs with the land and is binding upon a subsequent purchaser with notice. Prince v. Alford, 173 Ark. 633, 293 S.W. 36. See also, Nordin v. May, 8 Cir., 188 F.2d 411; Lawhon v. American Cyanamid & Chemical Corp., 216 Ark. 23, 223 S.W.2d 806. The same rule applies in other jurisdictions. See, Annotation, 29 A.L.R.2d 837.

■ Not only did the plaintiff, acting through her husband, have actual notice of the Miller lease but she was also charged with notice of the defendant lessee's rights since the defendant was in possession of the property at the time it was purchased by plaintiff. Prince v. Alford, supra. See also, Kimble v. Willey, 8 Cir., 204 F.2d 238, 242, 38 A.L.R.2d 814; Clements v. Fuller, 209 Ark. 849, 192 S.W.2d 762.

Under the facts in the instant case it is clear that the extension covenant is one which runs with the land and is binding upon the plaintiff.

### Has Defendant Complied with the Extension Covenant?

This issue is the primary one before the Court. Plaintiff contends that the term "Keith pit" used in the extension covenant means the original Keith Bar or Ball's Bar, and that defendant is no longer removing gravel from the Keith pit. To the contrary, defendant contends that the term "Keith pit" in the Miller lease means all of the Keith lands covered by the Keith lease, i.e., all the lands, containing gravel, owned by the said Keiths in Sections 16, 17, and 21, Township 4 South, Range 17 West.

■ The lease itself does not clearly indicate what is meant by the term "Keith pit", and therefore the Court may look to the mutual actions of the parties to the lease in determining the meaning of the term. In this connection, the following language from the case of Beasley v. Boren, 210 Ark. 608, 611, 197 S.W. 2d 287, 289, is appropriate:

"At the threshold of a consideration of the rights of the parties to

this litigation, it must be recognized that appellees, who purchased the property while appellant was in possession, were bound by the provisions of any valid agreement as to lease which appellant had with appellees' vendor. * * *

"The provision in the lease for its renewal was indefinite because it failed to fix the rental to be paid during the additional term. But, because a contract is uncertain in its terms, it does not necessarily follow that it is a nullity. The parties to a contract may, by their mutual actions in carrying it out, furnish an index to its meaning, which the language thereof fails to do. After all, the written instrument is but an evidence of what the signers thereof propose to bind themselves to do, and when, by their conduct in carrying out the agreement, both of the parties to the contract demonstrate an intention to heal an uncertainty in the contract, the courts will generally adopt this practical construction."

See also, American Republic Life Ins. Co. v. Flynn, 218 Ark. 825, 238 S.W.2d 937; Lutterloh v. Patterson, 211 Ark. 814, 202 S.W.2d 767.

In the instant case the actions of the parties to the Miller lease indicate rather conclusively that the term "Keith pit" was intended to mean and does mean all the Keith lands containing gravel in Sections 16, 17, and 21. This is true since the defendant, with the apparent approval of the lessors, has extended the lease from year to year while removing gravel from Keith lands other than the particular location known as the Keith Bar. The Court is convinced that if the parties had intended the term "Keith pit" to mean the original Keith Bar, that the lessors long ago would have sought to cancel the lease on the ground that defendant had discontinued removing gravel from the Keith Bar. Instead, the lessors continued to accept the rental payments and to permit defendant to extend the lease from year to year.

In addition to the actions of the parties to the lease, another factor lends support to the Court's determination that the parties contemplated the term "Keith pit" as including all three sections rather than merely the original Keith Bar or Ball's Bar. If the term "Keith pit" had been limited to the original Keith Bar, there would have been no necessity for the Miller lease to run for a period of ten years and to contain an extension covenant, since the sand and gravel could have been removed from the said Keith Bar in a much shorter period of time. The substantial length of time the Miller lease was to run is indicative of the fact that the parties intended the Miller lease to extend as long as gravel was being removed from the Keith lands in Sections 16, 17, and 21.

Thus, the term "Keith pit" used in the Miller lease refers to the Keith lands containing gravel in Sections 16, 17, and 21, and defendant is still removing gravel from said property. It follows that defendant has complied with the extension covenant and has not abandoned the lease.

## Conclusions of Law

### 1.

The Court has jurisdiction of the parties to and the subject matter of this action.

### 2.

The defendant, Malvern and Ouachita River Railroad Company, has no interest whatsoever in the subject matter of this action.

### 3.

The lease in question, which the Court has referred to as the Miller lease, is valid and is binding upon both the plaintiff and the defendant, Malvern Gravel Company.

### 4.

The defendant, Malvern Gravel Company, has not breached or abandoned the lease or any portion thereof.

### 5.

The complaint of plaintiff should be dismissed for want of equity.